NATHANIEL WEST *vs.* FIRST PRESBYTERIAN CHURCH OF ST. PAUL.

### June 24, 1889.

Religious Society—Fixing Minister's Salary.—Under Gen. St. 1878, c. 34, § 225, relating to religious corporations, the sole authority to ascertain and fix the salary or compensation to be paid to a minister is vested in the society or congregation.

Same—Call of Minister—Jurisdiction of Presbytery.—According to the usage and discipline of the Presbyterian Church in the United States, the call of a congregation for the services of a regular pastor, and the proceedings of the parties under it, are subject to the decision of the presbytery having jurisdiction, and the regular pastoral relation is constituted by the presbytery after the due acceptance of the call by the candidate.

Same—Acceptance of Call Requisite to Contract.—And until such acceptance by him no civil contract for his permanent employment as regular pastor at the stipulated compensation can be formed or made obligatory upon the congregation.

Same—Recovery by Minister for Services under Call not Accepted. And if, by mutual consent, his pastoral services are accepted as rendered under or in pursuance of the call, still the relation must be regarded temporary only, pending his decision, and no permanent obliga-

tion rests upon the congregation to pay him as if the regular pastoral relation had been duly constituted, or longer than it may consent to such employment; but for actual services so rendered the rate of compensation fixed in the call may be referred to and properly adopted as the measure of his compensation.

Appeal by plaintiff from an order of the district court for Ramsey county, *Kelly,* J., presiding, refusing a new trial after verdict of $354.72 in his favor.

*Hiler H. Horton* and *Nathaniel West,* in person, for appellant.

*John B. Sanborn,* for respondent.

VANDERBURGH, J.    This action is brought to recover upon a contract alleged in the complaint to have been entered into between the parties, whereby the plaintiff's services as a minister of the gospel were engaged by the defendant at an agreed compensation or salary of $3,000 per annum, payable in monthly instalments of $250 each. He alleges that he commenced his labors on the 1st day of January, 1886, and continued in the service of the defendant as such minister until May 1, 1887; that he has been paid therefor to the 1st day of November, 1886, and no more; and he seeks to recover the amount of salary at the rate stated for six months, ending May 1, 1887.    The answer denies that any contract was ever consummated between the parties, but admits that a call was extended to him by the defendant to become its regularly installed pastor, which was never finally accepted by him, and that he never consented to become the pastor of the church, though he preached for the defendant during the year 1886, except for six Sundays.

According to the usage and form of government of the Presbyterian Church, the call is made by the congregation duly convened, and the amount of compensation or salary is fixed by it, and inserted in the call, and this in harmony with the provisions of the statute, (Gen. St. 1878, c. 34, § 225,) under which the sole authority is vested in the society or congregation to agree upon the amount to be paid.    But the pastoral relation can only be established with the consent, and under the authority and direction, of the presbytery having jurisdiction. The call and proceedings of the parties under it are subject to the usages and discipline of the church, and the courts will not interfere

any further than is necessary to ascertain and protect the strict legal rights of parties. The call made by the congregation is submitted to the presbytery, and, if approved by that body and accepted by the candidate, the pastoral relation is then formally constituted by installation by or under the direction of the presbytery, and usually as soon as conveniently may be. The call and its acceptance are deemed equivalent to a petition and request of the congregation and pastor-elect for such installation; but, as the pastoral relation can only be finally consummated with the formal sanction of the presbytery, so that judicatory may withdraw its approval and refuse to proceed with the installation, and, according to its rules and established usage, it will refuse to do so if at the time appointed therefor the congregation then declines to receive the candidate as their minister. The presbytery, it appears, has the supervision and care of the churches in a particular district in connection with it, and in general has authority to order whatever pertains to their spiritual welfare, so that it may approve and establish the pastoral relation, or disapprove and annul it, and a dissolution of the pastoral relation, or a refusal to install, puts an end to the civil contract. *Robertson* v. *Bullions*, 9 Barb. 64, 135; *Connitt* v. *Reformed Prot. Dutch Church*, 4 Lans. 339.

In this instance the call of the congregation was in the customary form, was approved by the presbytery, and placed in the plaintiff's hands, and was held by him without final action or unconditional acceptance on his part, and he was suffered by the presbytery to hold it, in the mean time awaiting his determination or conclusion in the matter. This is sufficient evidence that he had not accepted. By the terms of the call the congregation proposed to pay the salary fixed during the time of plaintiff's "being and continuing the regular pastor of this church." The congregation, in making it, evidently contemplated the early establishment by the presbytery of the regular pastoral relation, in the usual course of proceedings, which could only follow from an acceptance and consent by the plaintiff such as would authorize the presbytery to constitute that relation. But this essential was lacking. There was no acceptance of the call as made, and hence no warrant for the establishment of the regular pastoral rela-

tion.   If the call had been duly accepted, a civil contract would have been formed subject to the future action of the presbytery, and we see no reason why pastoral services might not in such case begin under the call, by mutual consent, before the formal installation.    But the door would still be open for the parties, or either of them, to determine finally before presbytery whether the regular or permanent pastoral relation, with its consequent obligations, under the call, should be established.    The call was made in September, 1885, and plaintiff occupied the pulpit, and performed pastoral duties for the congregation, during the year 1886, except for six weeks, in the mean time holding the question of his acceptance of the pastoral office in abeyance.    In the mean time much dissatisfaction appears to have arisen in the church and congregation, and at a meeting of the latter, convened and held the 28th day of December, 1886, in their usual place of worship, upon notice given at the close of the services on the preceding Sabbath, it appears that resolutions were adopted, reciting the fact that plaintiff had not accepted the call, and that it was deemed unwise, under the circumstances, that the pastoral relation should be established, and requesting a return of the call to them by the presbytery, and directing the officers of the church to notify the plaintiff that his ministrations were not longer desired; and a committee was appointed to notify the presbytery of the action and wishes of the congregation in the premises.    For aught that appears from the record this meeting was regularly called, and, as respects the question under consideration here, there is no reason to doubt that the resolutions adopted were a full and fair expression of the will and determination of the congregation.   Whether they had the right to order the trustees to close the doors of the house of worship, and what authority the presbytery may exercise in such cases over the officers of the church, the religious services, and the supply of the pulpit, are questions entirely foreign to this discussion.

As respects the civil obligations of the defendant we are unable to see why it was not competent for the congregation, under the circumstances of this case, at that time to signify their refusal to accept plaintiff as their future pastor, or to engage to pay him as such, and the withdrawal of their petition for his installation.    And that was a

matter peculiarly within their province to determine.    In any event, whatever view may be taken of the effect of their ecclesiastical relations as to the *status* of the call, it would seem clearly in the power of the congregation to put an end to the temporary employment of the plaintiff, undertaken in expectation of accepting the call, and while considering it, and to terminate their liability for future compensation under that relation.    More than a year had elapsed since the call had been made out.    It had not been accepted by him.    He was still holding it, to accept or reject finally, at his option, and, as we have seen, he had not consented or requested to be installed.    It had remained an open proposition.    They might, at their option, withdraw it, and terminate the negotiations on their part.    There could be no hope or expectation of the success or usefulness of plaintiff's ministrations under such circumstances, and it would be unreasonable to insist upon the establishment of the regular pastoral relation against the will of the congregation.    And this is in accord with the usage and form of government of the Presbyterian Church, under which the presbytery would refuse to install the plaintiff under such circumstances.

. In respect to the plaintiff's assignments of error touching the admission in evidence of the record of this meeting, it is sufficient to say that the objections made thereto on the trial were not tenable, and there is no exception to the charge on that subject.    The formal call evidently relates to the permanent or regular pastorate, under the sanction of the proper ecclesiastical authority.    Unless the candidate accepts and consents to such relation, no contract for his permanent employment as regular pastor, and for the payment of his salary as such, can be formed or made obligatory upon the congregation, though they may consent voluntarily to accept his services under the call while reserving his decision.

The plaintiff's contention is, as we understand it, that because he performed, and they accepted and paid him for, services in pursuance of the call for the time alleged, the contract became obligatory upon them for future services, until released by the presbytery, though he still held the call to accept or reject at his option.    But the engagement to pay the salary of a pastor under a call like this is a civil

contract, to be made by the congregation, and is dependent upon the acceptance of the call, and the establishment and duration of the relation. No further or other conditions can be imposed by virtue of which they can be prevented from withdrawing their consent to continue his temporary or conditional employment, if entered upon before his acceptance. The obligations must be mutual. And, granting that the plaintiff's temporary services amounted to a qualified acceptance for the time, it could not extend their civil obligations further, and make them irrevocable, so as to require the same ecclesiastical sanction to release them as if the call had been accepted, or a regular pastoral relation had been constituted. The rule contended for by the plaintiff would turn the temporary engagement entered upon by him into one indefinitely binding on them, but not on him,—an irregular pastorate, not constituted by the presbytery, but one which could not be dissolved without its consent. To this we do not agree. Had he finally rejected the call, no further action would have been required. Had he seasonably accepted it, the case would have taken its regular course, and the complications, ecclesiastical and legal, which have followed would probably have been avoided. The question of the continuance of the anomalous relation in which the plaintiff's attitude in reserving his decision had placed the congregation could not remain open indefinitely, and their legal liability continue through prolonged ecclesiastical controversies; but they were, we think, legally justified in taking such action as they did.

The defendant's liability to plaintiff for future compensation growing out of the stipulation as to salary in the call, or the relations of the parties under it, terminated with the month of December, 1886. Whether further proceedings before the presbytery might be necessary in order to secure a formal withdrawal and return of the call by reason of its jurisdiction in the premises, and in the orderly course of ecclesiastical procedure, it is not necessary to consider here. This does not affect the question of the civil liability of the congregation for the temporary employment of the pastor-elect prior to his acceptance of the call; and the ecclesiastical body, it may be presumed, would, in due course, protect them from the establishment of the pastoral relation against their will.

2. As respects the amount of plaintiff's compensation, we think it is apparent from the record that he entered upon his services in response to the call, and in contemplation of its probable ultimate acceptance, if deemed advisable, or, as he says in his letter in response to the notice of it, that he would come and "labor among them at the compensation they indicated, and then, in the light of events and mutual consultation, give his final decision." We think the evidence fully justifies the conclusion that the services rendered were consented to, and accepted and paid for, from month to month, under this understanding. The temporary employment might be terminated at his will, and was not permanently binding upon them; but we think the monthly compensation for his services under it should be regulated by the terms of the call, which may be referred to for that purpose, as the proper measure of his compensation until his employment was terminated at the close of the month of December and the current year. The amount due him for November and December would therefore be the sum of $500, and to that amount presumptively he was entitled. The jury rendered a verdict for $354, but this appeal is not rested on the ground of the insufficiency of the verdict, and there is no sufficient assignment of error covering this point.

Many of plaintiff's numerous assignments of error relate to the charge or omissions in the charge of the court, but there was no exception to the charge which affects any material question upon the record; and, as our decision is based upon what appear to be the undisputed facts, it is not necessary to refer to questions which could in no wise influence the result.

Order affirmed.

NOTE. A motion for reargument of this case was denied July 9, 1889.