ST. HYACINTH CONGREGATION, Respondent, vs. BORUCKI, Appellant.

SAME, Respondent, vs. RAKOWSKI, Appellant.

*December 7, 1909—January 11, 1910.*

*Injunctions: Mandatory: Temporary: When issued: Religious socie-*
*ties: Removal of officers: Compelling delivery of books, etc.:*
*By-laws: Constitutional law: Roman Catholic church: Freedom*
*of worship: Special corporate powers: Continuance of injunc-*
*tion: Undertaking.*

1. Courts of equity have power to issue mandatory injunctions.
2. Sec. 2774, Stats. (1898), relating to temporary injunctions, contemplates their issuance in all cases where a party's rights cannot be effectually vindicated unless the opposing party be restrained from so acting or proceeding in such a way as will clearly tend to defeat the object of the suit.
3. In an action by an incorporated congregation of the Roman Catholic church to compel, by injunction, a former officer thereof, who claimed that he was still such, to turn over to his successor the books and property of the congregation in his possession and to restrain him from acting as such officer, where the facts were practically undisputed and the rights of the parties were as completely before the court upon an application for a temporary injunction as they would be after a trial, and it appeared that defendant was not entitled to the office and that if he were permitted to hold it during the pendency of the action the plaintiff would be defeated in the principal object of the action, which was to obtain control of the administration of its affairs, the court properly issued a temporary injunction in accordance with the prayer.
4. The provision in sec. 2001—12, Stats. (1898), that the two laymen selected under sec. 2001—10 as directors of a Roman Cath-

olic congregation "shall be and remain members of such corporation for the term of two years and until their successors . . . are chosen or selected as provided by the by-laws," relates to the two laymen first chosen as directors for the first two years of the corporation.

5. By-laws providing that the lay directors selected shall be approved by the archbishop; that they may at any time be removed from office by a majority vote of the board of directors; and that the board may fill the vacancies thus created, are within the authority given by secs. 2001—10 to 2001—17, Stats. (1898).

6. Secs. 2001—10 to 2001—17, Stats. (1898), authorizing the incorporation of congregations of the Roman Catholic church, with provisions for their organization and government different from those applicable to other religious societies, are in accordance with the constitutional guaranties of freedom of worship and liberty of conscience (Const. art. I, sec. 18). They do not grant special corporate powers or privileges in contravention of sec. 31, art. IV, Const.; nor do they deny to any person the equal protection of the laws in violation of the XIVth amendment to the federal constitution.

7. Under sec. 3061, Stats. (1898), the trial court had power upon denying a motion of defendants to vacate a temporary mandatory injunction, and upon defendants' application for a stay of proceedings pending an appeal, to order that such injunction should continue in force on condition that plaintiff give an undertaking to abide and perform any final judgment that should be rendered in favor of defendants.

APPEALS from orders of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

The respondent is an incorporated congregation of the Roman Catholic church. From January, 1905, to January, 1909, the appellants were the duly elected and qualified directors, and the secretary and treasurer, respectively, of the congregation. They claim to have been lawfully re-elected on January 10, 1909, and to be entitled to hold the offices of directors, and secretary and treasurer, respectively, until January, 1911. The complaints allege plaintiff's incorporation as a church, with a membership of about 1,000 families, property amounting to about $200,000, and having an annual income and annual disbursements of about $17,000. It is al-

leged that the business affairs of the congregation are administered by a board of directors, consisting of the archbishop, the vicar general of the diocese, the pastor of the congregation, and two lay members of the congregation elected by the congregation and qualified by the approval of the archbishop and subject to removal by a majority vote of the board of directors if they deem such removal for the best interests of the congregation. The activities of the congregation, their extent and importance, are alleged, as are the importance of the books of account in which the sources of revenue are recorded. It is alleged that the secretary and treasurer have exclusive access to the books of account, the moneys, funds, and evidence of indebtedness of the corporation, and that they have control thereof. The election and qualification of the defendants for the respective offices from January, 1907, to January, 1909, is set forth.

It is further alleged that in 1908 the members of the board of directors, exclusive of the lay members, received information that the treasurer had not accounted for all the moneys intrusted to him, and that with the knowledge of the secretary he had falsified his annual reports for the years 1906 and 1907 so as to make it appear that all the moneys had been accounted for, and that the defendant *Rakowski,* in a proceeding pursuant to sec. 4096, Stats. (1898), in an action commenced against him and his bondsmen, admitted that his annual reports for these years were not true and correct to the extent of about $585, and that he had made these incorrect reports with the knowledge of the secretary. It is alleged that, because of the shortage and the falsification of the accounts by the treasurer with the knowledge of the secretary, the archbishop did not approve defendants' alleged election on January 10, 1909, to succeed themselves in their respective offices.

The complaint alleges that at a meeting of the board of directors on January 15, 1909, by a majority vote of the direct-

ors, the defendants were removed from the offices of lay directors and of secretary and treasurer, and that the vacancies thus caused were filled by the election of Frank Cichocki and John Maciolek as lay directors, and that Frank Cichocki was designated as secretary and John Maciolek as treasurer; that the secretary and treasurer so elected by the board of directors have qualified; that they have demanded from the defendants the books and other property of the plaintiff, to the possession of which they were entitled; and that the defendants have refused to comply with the demands. It is claimed that their continued refusal and failure to surrender possession of such books and property to the secretary and treasurer so elected to fill the vacancies caused by the removal of the defendants will result in irreparable injury to the plaintiff.

The plaintiff prays for temporary injunctions commanding each of the defendants to turn over to his successor the books and other property of the congregation and for orders restraining them from acting as lay directors and forbidding them to interfere with their successors as such lay directors. Permanent injunctions to the same effect are also asked. Temporary injunctions, as prayed for in the complaints, were granted without notice to the defendants.

Upon the serving of the summons, complaints, and injunctional orders the defendants immediately applied for a vacation of so much of the injunctional orders as was mandatory in terms and effect. Before the applications were heard, the answers to the complaints were served.

The defendants admit that the temporal business of the plaintiff is administered by a board of directors composed as alleged in the complaint; that the by-laws of the corporation provide that an election of a lay director shall not be valid and effective unless approved by the archbishop of the archdiocese; that under the by-laws a majority vote of the board of directors may remove a lay director from the office of secretary or treasurer and from the position of director, and that the di-

rectors may by a majority vote fill the vacancies thus created; but they allege that such organization of the board of directors and the by-laws are void because the legislation which attempts to confer such powers is unconstitutional. The answers allege that, by receiving a majority of the votes cast at the annual meeting of the congregation on January 10, 1909, the defendants were duly elected as the lay members of the board of directors, but the defendants admit that such alleged elections have not been approved by the archbishop. It is also alleged that they are the lawful lay directors by reason of being holdover officers, in case they are not qualified because their elections have not been approved by the archbishop.

It is further alleged that prior to April, 1907, the moneys of the corporation were kept in the parsonage of the congregation in an inner compartment of a safe for which the treasurer had a key. but it is alleged that neither the treasurer nor the secretary had the combination of the safe nor a key to the inner door. In the last months of 1906 the defendants and the four assistants or lay consulters of the congregation discovered that there was a discrepancy, amounting to $552, between the balance shown on the books of the corporation and the amount actually in the possession of the treasurer. The answers further aver that, since neither of the defendants had converted any moneys belonging to the congregation to his own use, the shortage was either due to an error or was caused by some person other than the defendants who had access to the safe.

The provisions of the articles of incorporation and the by-laws under which the board of directors of the plaintiff is organized and by which certain powers are conferred upon the directors are alleged to be violative of the state and federal constitutions, in that they violate art. IV, sec. 31, of the state constitution, by which the legislature is prohibited from enacting any special or private laws granting corporate powers or privileges, except to cities; of art. I, sec. 18, which prohibits any preference being given by law to any religious establish-

ments or modes of worship; and of the XIVth amendment to the federal constitution, which provides: "Nor shall any state deprive any person of . . . property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The defendants plead as a counterclaim to the actions that the acts of the board of directors were done to embarrass the defendants in the performance of their duties as lay directors and as secretary and treasurer of the congregation, and they therefore pray that the complaints be dismissed and that the plaintiff and its officers be restrained from interfering with the defendants in the performance of the duties of their respective offices.     Based upon the answers of the defendants, an order issued to show cause why the temporary injunction prayed for in the answers should not be granted.

By consent of the parties the motions to vacate the temporary injunctions issued in behalf of the plaintiff and the motions to grant the temporary injunctions asked by the defendants were heard together.     Both motions in each case were refused, and upon defendants' applications for a stay of proceedings pending appeal the court ordered that the temporary injunctions issued in plaintiff's behalf should continue in force on condition that the plaintiff give an undertaking in the sum of $1,000.     Under the orders of the court the defendants have surrendered their offices and the books and property mentioned in the complaints.

The defendants appeal from the orders of the court refusing to vacate the mandatory provisions of the temporary injunctions issued in behalf of the plaintiff, from the orders denying defendants' motions for restraining orders during the pendency of the action, and from the orders which continue during the stay of proceedings the injunctions issued in plaintiff's behalf on condition that the plaintiff give the undertaking as directed.

A. C. Umbreit, for the appellants.

For the respondent there was a brief by *O'Connor, Schmitz & Wild,* and oral argument by *A. J. Schmitz.*

SIEBECKER, J.   The power to issue mandatory injunctions is recognized as an appropriate function of courts of equity. In *In re Lennon,* 166 U. S. 548, 17 Sup. Ct. 658, the court, speaking of a preliminary injunction which was assailed as unwarranted because it was mandatory in its character, states:

"Perhaps, to a certain extent, the injunction may be termed mandatory, although its object was to continue the existing state of things and to prevent an arbitrary breaking off of the current business connection between the roads.   But it was clearly not beyond the power of a court of equity, which is not always limited to the restraint of a contemplated or threatened action, but may even require affirmative action, where the circumstances of the case demand it."   See, also, Bispham, Principles of Equity, § 400; Pom. Eq. Jur. § 1359, note.

Sec. 2774, Stats. (1898), contemplates the issuance of temporary injunctional orders in all cases where it appears that a party's rights cannot be effectually vindicated unless the opposing party be restrained from so acting or proceeding in such a way as will clearly tend to defeat the object of the suit. *Bartlett v. L. Bartlett & Son Co.* 116 Wis. 450, 93 N. W. 473. See cases cited.

The question arises: Does the record now before us disclose a case wherein this power should be applied to protect the plaintiff in its rights?   The facts of the case are practically without dispute.   In so far as the rights of the parties are properly within the jurisdiction of a civil court, there is no dispute in the facts respecting the defendants' status as corporate officers of the congregation.   It is conceded that their election as members of the board of directors in January, 1909, was not approved by the archbishop as provided by the by-laws of the corporation; that the majority of the directors at a regular meeting removed them from office; and that the vacancies thus created were filled by the appointment of others

from the lay membership of the practical communicants of
the church. If the action of the board of directors in these
respects, authorized by the articles of incorporation and the
by-laws, was lawful, then on the application for preliminary
injunctions the rights of the respective parties to the contro-
versy were as completely before the court as they would be at
any stage of the trial and final judgment.

It is argued that the order issued is mandatory in its terms
and operates to disturb the *status quo* of the controversy, in
that it directs defendants forthwith to surrender and deliver
up to the persons selected by the directors as their successors
in office the books, money, papers, and all other articles be-
longing to the congregation and now in their possession; and
in that it restrains them from further control over them and
from exercising any of the functions or performing any of the
duties of the offices of directors and of secretary and treasurer
of the corporation; and in that this order in effect determines
the whole controversy, which should only be adjudicated in
the final judgment in the action. The propriety of this pre-
liminary order depends upon the rights of the parties under
the exigencies of the situation presented to the court. The
inquiry first in order pertains to the right of the defendants to
continue in office under the facts and circumstances shown.
It is contended that their rights to hold the offices cannot be
determined in this preliminary proceeding, but must be held
in abeyance until final judgment is awarded. As stated, the
facts admitted by the defendants present at this stage of the
case the question of their right to continue in office, and con-
stitute the basis for an adjudication of this preliminary ques-
tion as well as that for final judgment. There is no circum-
stance in the case to furnish a ground for preventing the court
from fully determining the questions involved or which de-
mands postponement of their consideration for the protection
of the rights of the parties. It clearly appears that if the de-
fendants are not entitled to hold the offices to which they claim

title, but continue to hold them during the pendency of the action, the plaintiff will be well nigh deprived of substantial redress, for the plaintiff's principal object in this action is to obtain possession of the corporate offices and to control the administration of the affairs of the congregation by the persons selected for the purpose.

The primary question, therefore, is: Does the record show that a trial must be had to ascertain the facts and circumstances establishing the right of the plaintiff to the possession of the books and other articles of the congregation? There is no dispute that the archbishop did not approve, as required by the by-laws, the defendants' selection in 1909 as the lay members of the board of directors by the members of the congregation, and that the board of directors by a majority vote removed them from the offices and selected two qualified lay members to fill the vacancies thus created in the offices. If the archbishop and the board of directors possessed authority to act for the corporation in these respects, it is obvious that the defendants had no right to continue in office and in control of the affairs of the congregation, and that the court properly granted the preliminary relief to prevent a continuance of the wrongdoing of the defendants which would defeat the object of the suit.

It is averred that the terms of the statutes granting authority to Roman Catholic congregations to incorporate confers no power to prescribe by-laws providing that the archbishop must approve the selection by the members of the congregation of the lay members of the board of directors to entitle them to hold the office, and providing that a majority of the members of the board of directors may remove such members from office if such majority deem it necessary for the best interests of the corporation. The statutes on this subject are embraced in secs. 2001—10 to 2001—17, Stats. (1898). Sec. 2001—12 provides that the two laymen selected under sec. 2001—10 as trustees "shall be and remain members of said corporation

for the term of two years and until their successors, who in all cases shall be laymen, are chosen or selected as provided by the by-laws." Under sec. 2001—15 "the directors, by unanimous vote, may adopt such by-laws, not contrary to the constitution and laws of this state, the statutes of the diocese and the discipline of the Roman Catholic church, as may be deemed necessary for the proper government of such corporation and the management and business thereof or the temporal affairs of such congregation which may become connected therewith or attached thereto." These provisions manifestly make the two laymen, first chosen under sec. 2001—10 from among the members of the corporation, the lay trustees for the first two years of the corporation and until their successors are chosen or selected as provided by the by-laws. The by-laws of the plaintiff concededly require that the lay members selected for trustees shall be voted for by the members of the congregation and approved by the archbishop, and that if a vacancy occurs in the board of directors the vacancy may be filled by the remaining members of the board. We find nothing in the law forbidding this mode of selecting the lay members of the board of trustees and of filling vacancies in the office of trustee. The statute grants authority that the selection of such laymen as trustees shall be "as provided by the by-laws." The by-laws in question are within the authority there granted and are binding on the members of the congregation. The result is that the defendants were removed from office in the manner prescribed by the by-laws and have no right or authority to exercise the functions of the offices of trustees and secretary and treasurer. Up to the time of the injunctional order they wrongfully withheld from their successors the custody and control of such books, papers, moneys, and other articles as were in their possession, and they thereby wrongfully interfered with the administration of these respective offices and the properties and temporalities of the church.

It is contended that the law authorizing the incorporation of the congregations of the Roman Catholic church is not valid legislation because it contravenes the provisions of the state constitution prohibiting the legislature "from enacting any special or private laws . . . for granting corporate powers or privileges, except to cities" (Const. art. IV, sec. 31), and that such legislation is violative of the rule providing for the equal protection of the laws. The statutes embraced in ch. 91, Stats. (1898) (secs. 1990 to 2001—20), authorize the incorporation of religious societies. It is manifest from the contents of the chapter that the legislature, mindful of the constitutional provisions guaranteeing freedom of worship and liberty of conscience (Const. art. I, sec. 18), provided a means by which the various religious societies might become incorporated for the administration of the temporal affairs connected with their ecclesiastic organization. The statute authorizes the incorporation of voluntary religious associations for the support of a place of worship and the maintenance of a ministry in conformity to their religious establishment and their modes of worship, and recognizes that all who unite themselves with such a body consent to be governed by the laws and regulations of the associations. The appellants claim that the law operates to grant special corporate privileges and powers, in that permission is given to different religious associations to administer their ecclesiastical affairs pursuant to their peculiar systems of government and organization. The statute does no more than to take cognizance of the fact that there are voluntary associations with different systems of government to which the members thereof voluntarily consent. The law therefore refrains from imposing any restrictions on the right of the members to frame any form of organization and to adopt any form of government for the conduct of its members and the administration of its affairs not repugnant to the constitution and the laws of the state. This accords with the constitutional guaranties establishing freedom of worship and

liberty of conscience. The provisions of ch. 91, Stats.
(1898), grant no special corporate powers or privileges for-
bidden by the constitution, and it does not deny to persons the
equal protection of the laws. The law operates generally and
equally throughout the state on all citizens who consent to
unite themselves with any of the different voluntary religious
organizations.

The point is made that the court erred in allowing respond-
ent to file an undertaking conditioned to abide and perform
any final judgment that should be rendered in favor of the ap-
pellants. Sec. 3061, Stats. (1898), clearly gives the trial
court power to authorize the respondent to file such an under-
taking upon the making of the orders in question, and we per-
ceive no error in the action.

The orders appealed from were properly made in both cases
and must be upheld.

*By the Court.*—It is so ordered.