## RUSSIAN-SERBIAN HOLY TRINITY ORTHODOX CHURCH OF ST. PAUL v. TROFIN KULIK AND OTHERS.[1]

April 29, 1938.

No. 31,630.

*Horace Van Valkenburg,* for appellants.

*Francis J. Nahurski* and *Philip J. Mackey,* for respondent.

[1]Reported in 279 N. W. 364.

PETERSON, JUSTICE.

This action is brought in plaintiff's name by a group who claim to be its trustees, elected on July 5, 1936, against their priest and another group who claim to be the trustees elected on August 9, 1936, to recover possession of the property of the church alleged to be in the possession of defendants and wrongfully withheld by them from plaintiff group. We shall not consider whether the action is properly brought in plaintiff's name. Those bringing the action will be referred to as the plaintiff group.

Plaintiff was organized in 1916 as an unincorporated Russian Orthodox Greek Catholic church and was incorporated as such in 1919. Each group of trustees challenges the validity of the election of the other upon the ground that the meetings at which the respective elections were held were irregular, unauthorized, and illegal under the laws of the church. Plaintiff group admits plaintiff's affiliation with the Russian Orthodox Greek Catholic church and does not challenge the authority of the bishop and other church dignitaries. It admits that plaintiff is subject to the jurisdiction, laws, customs, and usages of the Russian Orthodox Greek Catholic church in ecclesiastical matters and recognizes the Metropolitan as the head of the church. It asserts that plaintiff is independent in temporal matters. Plaintiff's asserted independence of all authority is said to result from its incorporation under the laws of the state of Minnesota and the adoption by it of by-laws in 1930 for its own government. The defendant group claims that plaintiff is subject to the laws, rules, and usages of the Russian Orthodox Greek Catholic church, which it urges are in conformity with our statute and under which the by-laws of 1930 are null and void. Both groups admit that plaintiff owns the property involved in this case and that the trustees of plaintiff are entitled to take charge and have possession of such property. The only question is which group are the trustees of plaintiff. The plaintiff group prevailed below.

Plaintiff is incorporated under 2 Mason Minn. St. 1927, § 7963 (G. S. 1913, § 6592, as amended by L. 1919, c. 122, § 1). The statute provides that "the stated worshipers with any church" may incorporate by complying with its provisions; that the voters of the

church shall elect trustees "to take charge of its property and temporal affairs"; that they shall adopt a name for the church; that they may determine the qualifications of the trustees to be thereafter chosen and "the religious denomination or sect to which the society shall belong." There is no provision in the statute prescribing the form of church government. It does not provide that church corporations created thereunder shall be independent of all other church organizations. On the contrary, the statute in terms without express limitation permits affiliation by church corporations with a general church organization of a denomination or sect. Since affiliation with a general church organization can be only according to the laws and rules of the particular denomination or sect with which such affiliation is had, the statute contemplates an affiliation subject to such laws and rules as a permissible incident. Implicit in such a church organization is the conduct of its business in accordance with its own rules and regulations, not inconsistent with the constitution and law of the land. A statute permitting the incorporation of a church does not, in the absence of specific provision to that effect, take away from the church corporation the power to transact its secular business according to the law, rules, and customs of the particular denomination or sect to which the church belongs. West v. First Presbyterian Church, 41 Minn. 94, 42 N. W. 922, 4 L. R. A. 692; East Norway Lake Church v. Halvorson, 42 Minn. 503, 44 N. W. 663; Second Baptist Church v. Beecham (Mo. App.) 180 S. W. 1065; Grupe v. Rudisill, 101 N. J. Eq. 145, 136 A. 911; 54 C. J. pp. 33 and 34, § 61, note 52. See Lindstrom v. Tell, 131 Minn. 203, 154 N. W. 969; Mattson v. Saastamoinen, 168 Minn. 178, 209 N. W. 648. In Klix v. St. Stanislaus Parish, 137 Mo. App. 347, 118 S. W. 1171, 1177, it was held that the court, in determining the control of church property and method of church government, should adopt, if possible, that construction of a statute authorizing the incorporation of a church which will permit religious bodies to be incorporated and still preserve the form of church government of the denomination to which the church body belongs. The court said that after a church has been incorporated the regulations and customs of the communion to which it belongs regard-

ing the secular business will be respected by the courts as far as possible; and if the mode of government in force in the denomination at large is not by congregations but by superior clerical personages, assemblies, synods, councils, or consistories, the authority of these will not be displaced if it can be upheld consistently with the laws of the sovereignty. The court said [137 Mo. App. 367]:

"We should adopt, if we can, such a view of the law as will permit religious bodies to be incorporated and yet preserve their original form of church government, instead of revolutionizing it from a hierarchal or synodical into a congregational form."

The cases relied on by the plaintiff group of trustees are not in point. In Russian Orthodox All Saints Church v. Darin, 222 Mich. 35, 49, 192 N. W. 697, 702, the court pointed out that "the parish was organized by this voluntary association under a congregational form of government for its temporal affairs and so recognized by the ecclesiastical authorities with which it affiliated and to which it submitted in matters of faith and form of worship." It never came under the jurisdiction of the general organization of the church. The same may be said of the organization of St. Mary's Russian Orthodox Greek Catholic Church, which was pointed to in the evidence as an independent church of the Russian Orthodox Greek Catholic faith. In Komarynski v. Popovich, 232 Mich. 88, 205 N. W. 184, the church was what is known as a "uniate" church bearing the name of the Ukranian Greek Catholic church. It was organized as an independent church, but recognized allegiance to and was in communion with the Roman Catholic church. Its articles of incorporation did not specify, as do those in the case at bar, the religious affiliation of the church. In the case of St. John the Baptist Greek Catholic Church v. Gengor, 121 N. J. Eq. 349, 189 A. 113, a Ruthenian church was involved which had the same characteristics as the "uniate" church involved in Komarynski v. Popovich, supra. The authorities relied on by plaintiff simply hold that if a church is organized as an independent church and does not come under denominational or other superior control it remains independent. If it has adopted a congregational form of government

it retains that form of government. But in the case at bar it is admitted that the plaintiff was organized as and affiliated with the Russian Orthodox Greek Catholic church. It came under the general jurisdiction of that church. Independence is said to result not from organization as an independent church, but from our statute which authorizes the incorporation of the church under the laws of the state of Minnesota and from the by-laws which the plaintiff adopted in 1930. We find nothing in the laws, customs, and usages of the Russian Orthodox Greek Catholic church inconsistent with our statutes. The statute permits churches organized thereunder to have affiliation such as exists between the Russian Orthodox Greek Catholic church. Incorporation under our statute does not make a church affiliated with a denomination and subject to its control independent.

■ The by-laws of 1930 provide for the election of trustees and the right of plaintiff itself to appoint a priest independent of all church control or authority. These by-laws are assailed upon the grounds, first, that plaintiff never legally adopted them, it being claimed that they were adopted at a meeting of an organization affiliated with plaintiff known as the Russian Brotherhood, and, secondly, that they are illegal and void as being in contravention of the law of the Russian Orthodox Greek Catholic church. Only the last mentioned ground of invalidity will be considered. A church society may choose whether it will retain its independent congregational character or become a part of a larger church or denominational organization in which its congregational independence is surrendered. Where a local church congregation is a member of a general organization having general rules for the government and conduct of its churches, parishes, adherents, and officers, it becomes subject to such rules and regulations. The voluntary act of joining the general denominational organization subjects the local church to its rules and regulations. 23 R. C. L. p. 423, § 4; Watson v. Jones, 13 Wall. 679, 20 L. ed. 666; Parish of the Immaculate Conception v. Murphy, 89 Neb. 524, 131 N. W. 946, 35 L.R.A.(N.S.) 926; Venable v. Ebenezer Baptist Church, 25 Kan. 177; Harlem Church v. Greater N. Y. Corp. 145 Misc. 508, 260 N. Y. S.

517; Canovaro v. Brothers of Order of Hermits, 326 Pa. 76, 191 A. 140; Bonacum v. Harrington, 65 Neb. 831, 91 N. W. 886.

For the purposes of this rule, it makes no difference whether the governing authority is confided to one man or to a governing body. Bonacum v. Harrington, *supra* (*per* Pound, Commissioner). Plaintiff became a member of the Russian Orthodox Greek Catholic church at its inception and reaffirmed such affiliation in its articles of incorporation. By becoming a parish of the Russian Orthodox Greek Catholic church plaintiff became subject to its laws, customs, and usages. The Russian Orthodox Greek Catholic church has episcopal government. The highest governing body of the church is the Sobor, which is a convention composed of clergy and laity elected from the various parishes. At the head of the church is an archbishop with the title of Metropolitan of North America, who presides over the archdiocesan council composed of nine bishops representing the bishoprics into which the United States of America is divided for purposes of church organization. It has a body of canon laws, customs, statutes, and usages for its government. These define in detail the powers and duties of all church authorities and the relation of the local parish to the general church organization. The Russian Orthodox Greek Catholic church has adopted certain normal statutes which are binding on all member churches without ratification or approval by them and which they are powerless to reject. They provide that every parish is "subordinate to the local archbishop or bishop"; that the officers of the parish shall be confirmed after election by the bishop, and if the bishop refuses to confirm the one elected, the office shall be vacant and a new election shall be had; that the minutes of all parish meetings shall be confirmed by the bishop before they become effective; and that all by-laws of local parishes inconsistent with the normal statutes and other law of the church are void. The laws of the general church do not permit a member church to withdraw, and they do not recognize such a thing as an independent church. The laws of the general church provide that only the bishop may appoint, remove, or transfer the priest of a local parish. Insofar as the by-laws of 1930 provide that plaintiff shall be independent of the general church

in the respects mentioned, they are invalid. The laws of the denominational organization relative to the election of officers by the local church govern. Myers v. First Presbyterian Church, 11 Okl. 544, 69 P. 874; Den v. Bolton, 12 N. J. L. 206. The normal statutes of the Russian Orthodox Greek Catholic church govern the election of plaintiff's trustees. A provision in a by-law of a church denomination for confirmation by the bishop of one elected trustee before such election shall become effective is valid. St. Hyacinth Congregation v. Borucki, 141 Wis. 205, 124 N. W. 284; Zollman, American Church Law, § 162. We recognized the right of higher church authority over a congregation or parish organized as a corporation under the laws of Minnesota to approve the selection of its pastor and officers by holding in West v. First Presbyterian Church, 41 Minn. 94, 42 N. W. 922, 4 L. R. A. 692, that, according to the usages and discipline of the Presbyterian church in the United States, the call of a congregation for the services of a regular pastor and all the proceedings relative thereto are subject to the decision of the presbytery having jurisdiction, and that the regular pastor relation is not constituted by the call extended by the congregation but by action of the presbytery after due acceptance of the call by the candidate.

A congregation or parish of a general ecclesiastical organization does not have the power to declare its independence in violation of its laws, usages, and customs. If the laws, customs, and usages of the general church organization to which a church or parish belongs do not permit it to declare its independence without the consent of the general organization, any attempt of the church or parish to assert its independence is invalid. By becoming a member of the general church the plaintiff surrendered its independence, not at its will, but according to the law of the general church. Kelly v. McIntire, 123 N. J. Eq. 351, 197 A. 736; Ferraria v. Vasconcelles, 23 Ill. 456; Vasconcellos v. Ferraria, 27 Ill. 237; Smith v. Pedigo, 145 Ind. 361, 33 N. E. 777, 44 N. E. 363, 19 L. R. A. 433, 32 L. R. A. 838; Russie v. Brazzell, 128 Mo. 93, 30 S. W. 526, 49 A. S. R. 542; Rector, etc. of Christ Church v. Rector, etc. of Church of Holy Communion, 14 Phila. 61; Sutter v. Trustees of the First

Reformed Dutch Church, 42 Pa. 503; McAuley and Others' Appeal, 77 Pa. 397; Dochkus v. Lithuanian Benefit Society, 206 Pa. 25, 55 A. 779; Mt. Zion Baptist Church v. Whitmore, 83 Iowa, 138, 49 N. W. 81, 13 L. R. A. 198; Daugirda v. Karalus, 104 Pa. Sup. 404, 159 A. 216; Trustees of Presbytery v. Westminster Presb. Church, 222 N. Y. 305, 118 N. E. 800; 23 R. C. L. pp. 423, 424, § 4; 54 C. J. pp. 35, 36, § 65.

The by-laws of 1930, insofar as they purport to make plaintiff independent of government and control of the Russian Orthodox Greek Catholic church, are invalid.

■ The election of the plaintiff group on July 5 did not become effective under the law of the church. The Metropolitan, acting pursuant to church law in the temporary absence of Bishop Leonty of Chicago, who otherwise had jurisdiction in the premises, refused to approve either the election or the minutes of the meeting. In effect he set aside the proceedings had at the meeting of July 5 and ordered a new meeting, which was held on August 9, over which presided his representatives, one Reverend Nedzelnitsky, the dean of the district in which the church is situated, and one Reverend Ristanovich, a priest of the Serbian Orthodox church and the administrator of the Serbian Orthodox churches in this country. The meeting was regularly called and conducted. At this meeting the defendant group of trustees were elected. The minutes of the meeting and the election were confirmed by the bishop. This election was pursuant to the laws of the church. The election of the defendant group having been held in accordance with the laws of the church, the defendant group are the regularly elected trustees of the plaintiff.

■ The church contains within its governmental setup officers to whom an appeal may be taken from any decision of a local parish. Pursuant thereto, both groups invoked the jurisdiction of the Metropolitan as the highest church authority, who took jurisdiction and they submitted their causes to him. The defendant group and some others petitioned the Metropolitan not to confirm the election or approve the meeting of July 5. The plaintiff group petitioned the Metropolitan to let the election of July 5 stand, call off the

meeting called for August 9, and to remove Father Davidoff as priest and send them a new priest. On July 7 the Metropolitan declared the meeting of July 5 unlawful and then referred the matter to Reverend Ristanovich and Reverend Nedzelnitsky with directions to hold the meeting held on August 9 and to conduct an investigation of the controversy. Presumably, all the parties were familiar with the law of the church that no meeting or election is effective without the approval of the bishop, that the bishop alone has the power to appoint and remove priests and that his decision on appeal is a final adjudication of matters submitted to him. As a result of the appeal and the submission, the Metropolitan refused to remove the priest, and Bishop Leonty, who had returned, confirmed the election of August 9, thereby making the election of the defendant group effective. Church organizations have the right to establish tribunals to decide questions arising within the organization. The final judgments and decisions of the governing authority of a general church organization having rules for the government and conduct of its adherents, congregations, and officers, as far as they relate exclusively to church affairs and church government, are binding on the local churches and parishes. Courts will review such judgments and decisions only for the purpose of determining their regularity or adherence to the laws and usages of the general organization. This is so not because the law recognizes any authority in such a body to make a decision determining civil rights, but because the parties have made it the "arbiter" of any questions that may arise. East Norway Lake Church v. Halvorson, 42 Minn. 503, 44 N. W. 663; Watson v. Jones, 13 Wall. 679, 20 L. ed. 666; Den v. Bolton, 12 N. J. L. 206; Brown v. Clark, 102 Tex. 323, 116 S. W. 360, 24 L.R.A. (N.S.) 670; 23 R. C. L. 440, § 18. The submission of the controversy to the higher church authorities and all the proceedings relative to the matter were had pursuant to the law, customs, and usages of the church. The decision is final. The defendants are entitled to judgment.

Reversed and judgment ordered in favor of defendants.

MR. JUSTICE STONE took no part in the consideration or decision of this case.