Saint John The Baptist Greek Catholic Church of Allentown et al., Appellants, *v.* Musko.

Argued April 17, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*George J. Joseph,* with him *Richard J. Makoul,* for appellants.

*W. Hamlin Neely,* with him *Henry L. Snyder, William E. Schantz,* and *Snyder, Doll & Schantz,* for appellee.

OPINION BY MR. JUSTICE EAGEN, June 28, 1972:

The appellants, members of St. John The Baptist Greek Catholic Church of Allentown [St. John's], instituted this action in equity seeking to restrain the appellee, the Reverend Andrew C. Musko, from conducting services in St. John's religious edifice, using the rectory, or interfering with the performance of

pastoral duties at St. John's by any duly appointed Orthodox priest. After extended hearings, the chancellor entered an adjudication and decree nisi dismissing the complaint. Subsequently, a court en banc dismissed exceptions to the chancellor's adjudication and made the decree nisi final. This appeal followed.

The facts critical to an understanding of this dispute between rival factions of St. John's find their genesis in events which occurred over three decades ago. Immediately prior to 1941, Father Musko, a married priest, was the pastor of St. Michael's Greek Catholic Church in Allentown, a church united with the Holy Roman See.[1] Discord arose in that congregation causing Father Musko and his adherents to disassociate themselves from St. Michael's and later to build the present church and rectory of St. John's.

On March 31, 1941, St. John's obtained a charter as a nonprofit corporation which was granted by a decree of the Court of Common Pleas of Lehigh County to No. 140, April Term, 1941. The purpose clause of the Articles of Incorporation declared as follows: "The purpose or purposes of the proposed corporation are the establishment and maintenance of a place of worship, a rectory, school, cemetery, and the establishment and maintenance of a congregation for the purpose of worshipping Almighty God in accordance with the teachings, rules, customs, laws and regulations of the Greek Catholic Church *free and independent of and from any higher church authority or any larger or higher church body*; said congregation shall own and regulate and through its elected officers and priests acquire, maintain and dispose of any and all property real or personal as may be determined by the members." [Emphasis supplied.]

---

[1] St. Michael's was determined to be a Uniat church after a lengthy court battle.

Precipitating this dispute was the fact that Father Musko, an ordained Eastern Orthodox priest, after several meetings with Archbishop John Krol of Philadelphia, converted to the Roman Catholic Church some time in August of 1965.

On August 24th of that year, the Most Rev. Orestes P. Chornock, Titular Bishop of Agathonikeia and Bishop of the American Carpatho-Russian Orthodox Greek Catholic Diocese of the United States directed a letter to Father Musko undertaking to depose him as pastor of St. John's, ordering him to cease conducting services and to leave the church premises, and declaring that he was henceforth unfrocked from the priesthood.

When Father Musko refused to comply with this bishop's orders, certain of the parishoners met in an irregular session, elected their own slate of church officers and shortly thereafter began these legal proceedings.

In its opinion in support of the final decree the court en banc below found that St. John's was an independent church free of all higher episcopal authority and that the attempted removal of Father Musko by Bishop Chornock was not within the scope of his authority. Further, the court en banc concurred in the chancellor's determination that the issues raised by the complaint were ecclesiastical in nature and for that reason the court was without jurisdiction to afford equitable relief.

The appellants, representing one segment of the congregation, contend the court below erred in not ruling that St. John's is an organic part and member of the American Carpatho-Russian Orthodox Greek Catholic Church and as such, subject to the jurisdiction of the reigning bishop.

Since we conclude the court below was eminently correct in ruling St. John's is an autonomous, inde-

pendent entity, and hence, not subject to the authority of any higher church body, it is unnecessary to reach the constitutional problem involved in church disputes which was discussed by the United States Supreme Court in *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 89 S. Ct. 601 (1969).

As noted previously, St. John's is chartered as a nonprofit corporation under the laws of Pennsylvania. The Articles of Incorporation describe St. John's as a "Greek Catholic Church" which in itself is a somewhat ambiguous term. (See *Malanchuk v. St. Mary's Greek Catholic Church of McKees Rocks,* 336 Pa. 385, 9 A. 2d 350 (1939)). However, any ambiguity generated is at once dispelled by the clear terms with which the Articles further declare St. John's to be a church "free and independent of and from any higher church authority or any larger or higher church body."

Additionally, the duly enacted by-laws of the corporation reiterate this declaration of independence from higher episcopal authority (Church By-laws, Part 1, Paragraph 5) and further state: "The congregation has full power to select their own Bishop. The congregation pays catedraticum and other assessments to the Bishop only to that time that she is in accord with the Bishop. The congregation automatically ceases to have any connection or relations with the Bishop when she ceases paying diocesan assessments." Church By-laws, Part 1, Paragraph 6.

Attempting to establish a nexus between St. John's and Bishop Chornock's diocese, appellants point out that Father Musko was himself ordained by the head of the Russian Orthodox Metropolia; that he played an active role in the formation of the diocese and attended its sobors (congregations of clergy and laity); that he participated in services in other Orthodox

churches under Bishop Chornock's jurisdiction; that he received holy chrism from and paid assessments to Bishop Chornock as well as asking the latter for priests to serve during vacation periods and having him bless the church building at its dedication in 1960. Such facts as these are alleged to have established that Father Musko's use of the church property as a priest united with Rome constitutes a diversion of the property from its originally intended use as an Orthodox church subject to Bishop Chornock's episcopal authority.

The difficulty in terms of proof is that most of this evidence pertains to what Father Musko did as an individual. None of it had the effect of jeopardizing St. John's standing as an independent church. More importantly, the Articles of Incorporation and the by-laws clearly and beyond cavil establish St. John's was founded as and is presently an independent church. And where autonomous existence of an incorporated church is clearly evident from its charter and by-laws, this is conclusive. In such an instance, a civil court may not declare the church to be a member of some higher church body merely because of ritual, practice or tribute to that higher church organization. See *St. Michael and Archangel Russian Orthodox Greek Catholic Church v. Uhniat*, 436 Pa. 222, 259 A. 2d 862 (1969), and *Dochkus v. Lithuanian Benefit Society of St. Anthony*, 206 Pa. 25, 55 A. 779 (1903).[2]

---

[2] The record contains much evidence which indicates that St. John's autonomous existence was the result of a very deliberate choice rather than the product of inadvertence or ignorance of formalities. In 1960 the church trustees refused to sign a resolution tendered to them by Bishop Chornock which would have declared the church to be "an organic part and member of the American Carpatho-Russian Orthodox Greek Catholic Diocese." Additionally, the minutes of the February 7, 1960 meeting show that the invitation to bless the church extended to Bishop Chornock

The case of *St. John Chrysostom Greek Catholic Church of Pittsburgh v. Elko,* 436 Pa. 243, 259 A. 2d 419 (1969), relied upon by appellants is inapposite. Therein, the language of the charter of the church involved was ambiguous and unclear. Hence, the governmental nature of the church could not be determined from the charter itself, and the court necessarily turned to a consideration of the rituals and practices of the church to determine if it were founded as an independent church or one that was a constituent part of a hierarchially governed church organization.

It is a commonplace that "the law of Pennsylvania prevents a diversion of church property from a use to which it was originally dedicated to another inconsistent use. See the Act of April 26, 1855, P. L. 328, §7, 10 P.S. 81, as amended. See also Schnorr's Appeal, 67 Pa. 138 (1870) ; Gabster v. Mesaros, 422 Pa. 116, 220 A. 2d 639 (1966)." *St. John Chrysostom Greek Catholic Church of Pittsburgh v. Elko,* supra, at 245, 246. The record establishes no such diversion in the instant case. The church founders intended St. John's to be an *independent* Greek Catholic Church and it remains that way today. If Father Musko is unacceptable to his parishoners, then the by-laws prescribe the proper method for his replacement. It is only the membership of an independent church who is given the right to dismiss the priest. See *Malanchuk v. St. Mary's Greek Catholic Church of McKees Rocks,* supra; and

---

came from Father Musko personally, on the advice of legal counsel. This procedure was chosen so that congregational action would not be involved as well as to avoid any appearance of submission to jurisdiction. Hence, the position St. John's took is in many ways similar to that of the *Malanchuk* case, supra, where it was found that, "The members of the parish were honored at the visitation from high church dignitaries but they never lost the independence which made them reject further affiliation with those dignitaries. . . ." 336 Pa. 395.

*St. John Chrysostom Greek Catholic Church of Pittsburgh v. Elko,* supra.

Decree affirmed. Each side to pay own costs.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur in the result but do so not on the reasoning of the majority. My concurrence is based on the "formal title" approach discussed in my dissenting opinion in *St. John Chrysostom Greek Catholic Church of Pittsburgh v. Elko,* 436 Pa. 243, 256, 259 A. 2d 419, 425 (1969) (dissenting opinion).

In urging the adoption of the "formal title" approach, I pointed out in *St. John* that: " '. . . the titleholder of the property has the right to determine the use of the property with neither theology nor administrative church law as relevant considerations. Churches need not be classified as either hierarchial or congregational as in the Watson [v. Jones] approach. The civil courts under this alternative would enforce deeds, reverter clauses, and general state corporation laws in the same manner as in resolving any property dispute.' Comment, 54 Iowa L. Rev. 899, 907 n.53 (1969). Cf. Presbyterian Church, 393 U.S. at 452, 89 S. Ct. at 607 (HARLAN, J., concurring)." 436 Pa. at 260-61, 259 A. 2d at 427.

This approach to church controversies has the constitutional advantage of obviating the hazard of utilizing impermissible ecclesiastical doctrines and considerations in the adjudication of such controversies, whereas the approach employed by the majority involves examination and utilization of ecclesiastical matters inadmissible under *Presbyterian Church.*

Mr. Justice NIX and Mr. Justice MANDERINO join in this concurring opinion.