8bm 70
112 521
112 523

CHANCERY.

*Case* 22.

*December* 17.

Case stated.

# Hadden and others *vs* Chorn, &c.

## APPEAL FROM THE CLARKE CIRCUIT.

### *Witnesses. Church property. Parties.*

JUDGE BRECK delivered the opinion of the Court.—Judge Simpson did not sit in this case.

THIS is a controversy between two parties of professing christian Baptists, each party claiming to constitute *the Baptist Church* at Lulbegrud, in the county of Montgomery, involving the right to about two acres of ground, and the use of a house of public worship erected thereon. It appears that as early as 1793, a Church was organized, called the "Baptist Church of Christ at Lulbegrud." In 1807, Jilson Payne, conveyed to this Church, one acre of ground, upon which the house in contest was erected; and in 1836, Levi Prewitt vonveyed to Samuel Chorn and Nicholas Hadden, about one acre adjoining, in trust for the use of the "Lulbegrud United Baptist Church of Jesus Christ. In 1843, the Church being without a regular pastor, the Rev. Y. R. Pitts was invited to preach, and did preach on several occasions to the congregation. Some dissatisfaction was indicated to his course, and more especially in his attempt to admit members into the Church, contrary, as was insisted, to its laws and usages. Finally, on the Sunday succeeding the 3d Saturday in July, after the exercises were over, Mr. Pitts announced that there had been for some time a difference of opinion in the Church; that the Church had abandoned the terms of the Baptist Union, and that a part were disposed to *split off*, come out from amoung them, and set up for themselves. And he accordingly called upon such as were so disposed to come forward and give in their names, and the names of twenty-two members were obtained. Shortly afterwards, on the 25th July, this party had a meeting, and adopted a preamble and certain resolutions. It was a meeting, according to the record made of it,

"of a majority of the white members of the Lulbegrud United Baptists Church," and at which the preamble and resolutions are entered as having been unanimously adopted. The preamble recites that a portion of the Church had recently violated the terms of the Union entered into by the Kentucky Baptists in 1801, by refusing to acknowledge the official acts of United Baptist ministers, &c. The resolutions are in substance, that the party adopting them resolve to maintain their ground as the true United Baptist Church at Lulbegrud.

That the portion of the Church who had departed from the original platform and violated the terms of Union, had thereby gone out from the Union, and of course could not be regarded as co-operating with them or as of their body. That in their sovereign capacity as the Lulbegrud Baptist Church, they thereby, for the reasons stated, dissolve their connection with the North District Association. And finally, resolve that they regard their brethren and sisters who have gone out from them, as entitled to their charitable remembrance, and that they hold themselves in readiness, whenever they may return to the principles of the General Union, to receive them cordially to their affection and confidence.

The regular stated monthly Church meeting day of the Lulbegrud Church, up to this time, had been on the third Saturday in each month. At these meetings all the business of the Church was transacted.

Accordingly, at the stated meeting in August, the other party, claiming also to be *the Church*, met and expelled, or excluded from the fellowship of the Church, twenty four members, "for splitting off from her, setting up for themselves, and falsely saying that they are a majority of the white members of this Church."

Afterwards, at the stated meeting in September, three other members were excluded for leaving the Church and uniting with the former excluded members.

Each party claiming to be the Baptist Church at Lulbegrud, continued to act in that capacity, the latter holding their regular Church meetings as before, on the third Saturday and Sunday in the month, and the former

adopted and held theirs on the second, *each* respectively using the house on those occasions.

In 1844, on the third Saturday in June, the party adhering to that day as their stated meetings, appointed three of their members, viz: Nicholas Hadden, John Garrett and Lewis Harman, a committee to institute a suit on behalf of the Church, for the purpose of securing to it the uninterrupted enjoyment of their meeting house and grounds. That committee exhibited this bill against all the members of the alledged expelled or seceding party. In addition to the foregoing facts, they alledge that the number of members on the 3d Saturday in July, 1843, white and colored, was 136 or 137. That of this number, 68 were white members; and that at the time of the exclusion of said Chorn, &c., there were 37 or more white members belonging to the Church besides those excluded, and that those who formed the separate organization, had not more than 29 white members; and that at the time of the separate organization, they had not exceeding 22 members. They alledge that the excluded party, or a member of it, had at the division, the key of the meeting house, and had since continued to keep and had refused to surrender it.

They further alledge, that many years since said Chorn, Isaac Farrow, and the complainant, Hadden, had been appointed trustees of said Church, and their appointment had been duly recorded in the County Court of Montgomery; that Farrow having died, and Chorn being excluded, that at the regular Church meeting in August, 1843, Lewis Harman and Finley Garrett were appointed trustees in the place of Farrow and Chorn; that a motion to record the order making these appointments in the County Court, was opposed by members of the excluded party, and the motion overruled.

They pray that the defendants may be enjoined and restrained from interfering in any way with said meeting house and lots, and that they may be ruled to surrender the keys thereof, and that said Church may have the uninterrupted possession and enjoyment of the same.

Only three of the defendants, viz: Charles Hazlerig, Samuel Chorn and Stephen Treadway, answer the complainant's bill.

They insist in their answer, that the party, complainant, has departed from the terms of the Baptist Union, and as they, the respondents, and the Church to which they belong have not, they claim therefore, to to be "the United Baptist Church of Christ at Lulbegrud," and as such, might well claim to be the legitimate owners of the house and lots in question. They refer to the preamble and resolutions to which we have alluded, and alledge their adoption at a meeting of a majority of the white members of the Church. They state that it is true that all those present did not vote, or raise their hands for said preamble and resolutions, but as none voted against them, all were considered as acquiescing, and consequently counted in their favor. They therefore deny that they, or the Church to which they belong, were guilty of falsely stating that they were a majority of the white members of the Church. They deny that they have been constituted anew as a Church, and insist that they have stood firm to the constitution, terms of the Union, doctrines and usages of the United Baptists. They deny that they had been excluded from the Church:

1st. Because they, or the Church to which they belong, constituted *the Church.*

2d. Because the complainants had previously destroyed their character as a Church, for the reasons stated.

3d. Because, from the position the defendants and those they represent had taken, they had placed it out of the power of the complainants to exclude them.

They alledge that their Church had, in August, 1843, appointed three trustees, and that their appointment had been duly recorded in the Montgomery County Court.

They further alledge that the meeting house was in great need of repair, not only to render it comfortable for use, but for its preservation. That their Church had thoroughly repaired it, and made it comfortable, at an expense of about $500.

They admit that the key of the house had been in possession of the respondents, Treadway and Chorn, up to the time the complainants had procured a key of their own; but that the house had always been opened for them on their meeting days, and that since new locks had been put on the doors, a key had been tendered the complainants, which they had refused to receive. They also alledge that they and their Church have always been willing for the complainants to occupy the house in proportion to their numbers, claiming the same right for themselves, and that they are still willing, and now make that proposition, even if it should be decided that the house and lots were the exclusive property of the party defendant.

*Decree of the Circuit Court.*

The Court below was of opinion that the case was embraced by the act of 1814, and that the parties were entitled to the use of the house and lots in proportion to their respective numbers, and as the party represented by the complainants had held their stated monthly meetings for many years on the 3d Saturday and Sunday in each month, decreed to them the use of the property, commencing on the 3d Saturday in each month, and continuing until the Friday before the second Saturday in the ensuing month. The residue of each month is decreed to the defendants; and the parties are respectively enjoined from disturbing each other in the enjoyment of the property as decreed. Each party was decreed to pay their own costs.

The Court retained control over the case, for the purpose of making any necessary order for enforcing the decree, and to make such modification thereof, under the statute, as may be necessary and proper, in view of the altered condition of the parties.

The complainants have appealed to this Court, and the defendants assign cross errors.

*One of several members of a Church, who is one of two parties, who are litigating the right to the exclusive use of the*

Before examining the merits of the case, we will dispose of an objection made in the Court below to a portion of the testimony.

The complainants excepted to the deposition of Wilkerson and Summers, upon the ground that they were of the party defendant, and interested in the result of

the suit. The objection as to their competency was, we think, correctly overruled, and permitted to stand as to their credibility. They do not appear, although belonging to the party defendant, to have been parties to the suit. They were not legally liable, in any event, for costs, and their interest, if any, was not such as to render them incompetent.

An exception was also taken to the deposition of the defendant, Fletcher, but which, so far as appears, was not disposed of. As the exclusion of his testimony would not in the slightest degree affect the result of the case, we will not stop to enquire whether the exception was or not well taken.

In regard to the merits of the case, the first enquiry is, whether the case is embraced as assumed by the Circuit Court, by the act of 1814, (2 *Stat. Law,* 347.) The construction of that act came up in this Court in *Curd* vs *Wallace,* (7 *Dana,* 192;) *Shannon* vs *Frost,* (3 *B. Monroe,* 253;) and *Gibson, &c.* vs *Armstrong,* (7 *B. Monroe,* 481;) and according to the construction given to it in those cases, the case under consideration, we think, is not embraced by it. In Curd and Wallace, the suit was brought by trustees appointed by the Church, under that statute. In that case, a new society or Church had been formed by expelled and seceding members, and the trustees of this Church were alone made defendants. The Court decide that as the relief sought by the complainants, was in virtue of the statute, having no right to sue without it, the measure of relief, to which they were entitled, must be limited by it, and consequently that the old Church was only entitled to the meeting house and ground a portion of the time, to be determined by the relative number of its members, compared with those of the seceding party, who would be entitled to it the residue of the time.

In Shannon and Frost, the land upon which the house of worship had been erected, had been conveyed to trustees for the use of the Church, and the suit was brought by a committee appointed for that purpose, against Shannon and others, expelled members, who had formed a society and occupied the house a portion

HADDEN AND
OTHERS
vs
CHORN, &c.

of the time, against the will and in defiance of the old Church or majority party. The Court decide as the title to the property still remained in the original trustees, to whom it had been conveyed, that the statute of 1814 had no application whatever, and that the old Church were entitled to the exclusive use of the house.

In the case before us, the complainants, as in the case of Shannon and Frost, are a committee appointed under the act of 1835, which authorizes religious societies to appoint and sue by a committee. Their right to sue does not depend upon the act of 1814. They seek no relief in virtue of it, and consequently the extent to which they may be entitled to relief, if any, is not controlled by it.

A committee appointed by a Church to sue for its rights, who do not claim their rights under that act, but by prior right in the Church, will derive no aid from the provisions of that act.

In regard to the lot conveyed by Payne, and upon which the meeting house was erected, the act of 1814 conferred no authority upon the Church to appoint trustees, and of course no relief *could* be obtained under it. It only authorized trustees to be appointed where the property had been originally devised or conveyed to trustees for the use of the Church, and such was the construction in the cases referred to. The deed from Payne does not convey the property to trustees, but directly to the Church. The deed from Prewitt vests the title in trustees, who still, we think, hold it. As to *that* portion of the property, therefore, according to the case of Frost and Shannon, and Gibson and Armstrong, the act of 1814 has no application. It results that in no view of this case, is it embraced by that statute. And it becomes important, therefore, to enquire whether apart from it and upon other grounds, the complainants have manifested a right to relief. This question depends: 1st. Upon whether the party represented by the complainants constitute *the Baptist Church* at Lulbegrud, for if it does not, but is an excluded or seceding party, according to the cases cited, it has no interest in the property in contest.

Each party claims to be the true Church, the party defendant as well as the complainant, and each insists that the other has departed from the constitution, laws and usages of the Church. But whether the preten-

sions of one party are superior to those of the other in reference to its adherence to the doctrines, laws and usages of the Church as originally organized, is a question not necessary nor proper for this Court to decide. Each party claim to be Christian Baptists, and to decide which must be considered and treated as the Baptist Church at Lulbegrud, we must resort as the only test to their relative numerical strength at the time of the division.

That the party defendant was the seceding party and did not, at the time of secession nor at the time of the adoption of its preamble and resolutions, and declaring itself to be the Church, constitute a majority of the Church, or of the white members thereof, but were, in point of fact, a minority, sufficiently appears in view of the answer of the defendants and the testimony in the cause. We are also of opinion that it was a minority at the time of their exclusion. It may be true as alledged, and as the record of that party states, that their resolutions were adopted at a meeting of a majority of the white members of the Church, or rather that a majority were present. But that was not a regular meeting of the Church. It was a meeting of the minority, which had previously seceded, and was revolutionary in its character. It is conceded by the defendants in their answer, that all the members present did not vote expressly either for or against the resolutions, but that those who did not vote at all, were regarded as acquiescing in their adoption. But this did not, in point of fact, constitute the party a majority or convert a minority which had left, *gone out* from the Baptist Church at Lulbegrud, into the Church itself.

The party represented by the complainants, we are satisfied constituted the majority and must, therefore, be regarded as *the* Church.

A minority or seceding party cannot destroy the identity of a religious society or Church, by claiming to be itself the society or Church.

But independent of being the majority, there are other facts and circumstances tending very conclusively to show that the party complainants should be regarded

HADDEN AND OTHERS
vs
CHORN, &c.

A minority of a Church cannot by claiming to be the Church, exclude the majority or destroy the identity of the Church by claiming to be the Church.

HADDEN AND
OTHERS
vs
CHORN, &c.

as *the* Baptist Church at Lulbegrud. They have not altered the days, long since established of meeting for the transaction of the business of the Church and for worship. They have not professed to *come out* from the Church, nor have they had any new organization or convention whatever.

Regarding then, as we think the record compels us to do, the complainants as representing the Church, for whose use the property in contest has been dedicated, let us next enquire whether a Court of equity had jurisdiction to grant the relief sought.

In regard to the lot conveyed to trustees by Prewitt, the case is substantially like the case of Frost and Shannon.

In the conveyance by Payne, there were no trustees. But the property was dedicated to the use of the Church as a charity, and as such had been possessed and enjoyed by it without interruption, at the time of this unfortunate division, near forty years. The jurisdiction of a Court of equity to protect the intended beneficiaries under such circumstances, in the possession and enjoyment thereof, is well settled. It was so decided by the Supreme Court in *Beatty and Ritchie* vs *Kurtz and others,* (2 *Peters,* 566.)

In that case the Court decide that a committee appointed by the society sought to be protected, for that purpose, might maintain the suit. So that independent of our statute of 1835, (3 *Stat. Law,* 499,) the complainants, a committee duly appointed by the Church for the express purpose, were entitled to seek relief in a Court of equity.

The question then arises as to the extent and character of relief which should have been granted. As against the defendants as excluded or seceding members, in view of the principles settled and recognized by this Court in the cases referred to, it is evident the complainants or the Church they represent, were entitled to the exclusive possession and enjoyment of the whole property.

Whether the defendants are considered as expelled members or merely as a seceding minority, is deemed

---

*Marginal notes:*

A conveyance of ground to trustees for the use of a Church, vests the use in the Church and the Chancellor will protect the Church in the enjoyment of the use, (*Beatty and Ritchie* vs *Kurtz and others,* (2 *Peters,* 566.)

Where a minority of the members of a Church secede or are excluded, they have no right to claim the use of the Church any portion of the time under the statute of 1814.

wholly unimportant in reference to their claim. The question is, whether they are members of the Church or the party for whose use the property has been dedicated. If they are not, it is manifest they have no interest. They have not only repudiated the authority and government of the party which we think constitutes the Church, but they disclaim belonging to it, and have set up and organized a society wholly independent of it. Whether they have ceased to be members by expulsion or have voluntarily withdrawn, the effect in either case, as to their right to the property in contest, is the same. As has been shown, they are entitled to no protection under the act of 1814. They do not constitute *the Baptist* Church at Lulbegrud, but disclaim to be members of it or of the party which, in our opinion, does constitute it.

But although entitled to no relief or interest as a Church or as excluded or seceding members, yet upon another ground, we are inclined to the opinion they have an interest or claim deserving the favorable consideration of the Chancellor.

They alledge and prove that the meeting house, at the time of the separation, was greatly out of repair, wholly unfit for the purposes for which it was erected, and more especially in the inclement seasons of the year. That extensive repairs and improvements were indispensable. not only to render it comfortable as a house of public worship, but for its preservation. Such repairs and improvements, valuable, permanent and suitable, they appear to have made, at an expense of about five hundred dollars.

They further alledge, and it does not otherwise appear, that the complainants have ever been obstructed in the use of the house at any of their stated meetings or appointments. That they have ever been willing for them to enjoy the use of it a part of the time, in proportion to their numbers, and that they are still willing, even if it should be decided that they, the defendants, were entitled to the exclusive use of it.

They insist that in setting up for themselves and claiming to be the Baptist Church at Lulbegrud, they

A seceding minority of a Church while in possession of the Church, placed repairs upon the house, the remainder of the Church also using the house—Held that as the occupancy was in good faith and the repairs necessary, that the defendants should pay for the improvements put upon the Church as a condition to the exclusive use.

have acted conscientiously and under a solemn conviction that they were right and adhering to the established laws and usages of the Church.

It also satisfactorily appears that the cause of the separation grew out of an honest difference of opinion upon the subject of missionaries and the missionary cause, the defendants being in favor and the complainants against it. It is not even pretended that the division was produced by the immorality of the members. It moreover appears that the Church as constituted and claimed by the defendants, is recognized as such by associations of United Baptist Churches.

Under all the circumstances of this excited controversy, therefore, we have come to the conclusion that the defendants, upon equitable principles, are entitled to compensation for the repairs and improvements made by them upon the meeting house, and to a lien upon the use and enjoyment of the same as a house of worship a portion of the time, till the value of said repairs and improvements, which from the testimony may be assumed as $450, is reimbursed to them, or to the trustees of their Church for the use thereof, by the complainants or their Church. And until such payment is made, the two Churches will be entitled to occupy and enjoy the house as follows: the Church represented by the complainants, commencing on the Friday before the third Saturday in each month and continuing till the Friday before the first Saturday in the ensuing month, and the residue of the time the Church represented by the defendants will be entitled to it.

Upon the payment of the said sum of $450, the old party or Church will be entitled to the exclusive use and control of the house and lots and the defendants and their Church will be enjoined and restrained from interfering with the same in any way whatever.

It being alledged and admitted that the defendants have in their possession one of the old record books of the Lulbegrud Church, they should be ruled to deliver it up to the complainants.

In regard to the legal title to the lot conveyed by Prewitt, it appears to be still in Chorn and Hadden, the

original trustees. It did not vest in the trustees appointed by the new Church, that not being, as we have seen, the beneficiary under the deed; nor did it vest in the trustees appointed by the old Church, as their appointment was not admitted to record in the County Court as required by the statute. As Chorn has ceased to be a member of the old Church and is claiming the property against it, the Chancellor should remove him as trustee, and the Church be left at liberty to appoint another or others in his place. As to the Payne lot, as has been shown, the statute does not provide and the title did not and will not vest in any trustees which may be appointed under it.

The decree is reversed and the cause remanded, that a decree may be rendered in conformity with this opinion; and the Court will retain control over the cause for the purpose of making such orders, from time to time, as may be necessary and appropriate for enforcing said decree.

In view of all the circumstances, we are of opinion that each party should pay their own costs in the Court below, and as the decree has been reversed in reference to both the original and cross errors, the costs in this Court will be divided.

*Allan, Apperson and Houston* for appellants; *Hanson and French* for appellees.