Winnetka Trust and Savings Bank v. Practical Refrigerating Engineers Association et al., Appellees. E. S. Libby and A. L. Blatti et al., Appellants.

### Gen. No. 42,959.

Heard in the first division of

this court for the first district at the December term, 1943. Opinion filed April 3, 1944. Rehearing denied April 17, 1944.

ZIMMERMAN & NORMAN, of Chicago, for appellants; EDWARD A. ZIMMERMAN and WILLIAM R. ENGELHARDT, both of Chicago, of counsel.

TELLER, LEVIT & SILVERTRUST, of Chicago, for certain appellees; LEON SILVERTRUST and H. J. GOLDBERGER, both of Chicago, of counsel.

MR. JUSTICE NIEMEYER delivered the opinion of the court.

This appeal involves title to the funds and other property of Chicago Subordinate Chapter No. 1, National Association of Practical Refrigerating Engineers, hereafter referred to as the chapter, an unincorporated association organized in 1919 under a charter issued by the National Association, an unincorporated association organized in 1910. The parties to the controversy are, a very small minority of the members of the chapter who continued to function under the charter, and an exceedingly large majority of the membership which withdrew from the chapter and the National Association November 19, 1941 and became members of an independent organization—the Practical Refrigerating Engineers Association—an Illinois corporation not for profit, incorporated December 6, 1941, hereafter referred to as the corporation. By a decree, after proceedings had upon the filing of a complaint of interpleader by plaintiff bank, in which the funds involved were deposited by the officers of the corporation, the court found that the funds were the property of the corporation; directed that the clerk of the court, with whom the plaintiff bank had deposited the funds under order of court, pay them to the corporation, and dismissed for want of equity a counter-

claim filed on behalf of the chapter and its remaining members for the recovery of other property of the chapter, and an accounting. The appeal is taken on behalf of the chapter and its members, and appellants will be referred to as the chapter. Appellees—the corporation and certain officers and members—will be designated as the corporation.

There is no substantial dispute in the evidence. The National Association was organized, according to its constitution, "to further the education and enlightenment of its members in the art and science of refrigerating engineering," and was empowered to grant charters to chapters upon petition of ten or more men whose qualifications comply with the eligibility requirements of members of the association and who shall have first affiliated themselves in good standing in the association. The chapter received a charter from the National Association in 1919 and adopted a constitution recognizing the parentage of the National Association and stating the chapter's purpose to be "to aid the National Association in carrying out its tenets, as set forth in its preamble." At the time of the division the chapter had a membership of 237 paid-up members and, in addition to other personal property, a balance of $3,642.98 in its checking account with the plaintiff bank. For more than 15 years the chapter had published a yearly data book which, in addition to information on refrigerating engineering problems, contained paid advertising which furnished the chapter with an average annual net revenue of approximately $2,000. At the annual convention of the National Association, held in October 1941, the constitution was amended to authorize the president, with the approval of a majority of the board of directors, to suspend a chapter for violation of the constitution or by-laws, or for engaging in any activity which in their opinion is harmful to or threatens the welfare of the association. The by-laws were amended to pro-

vide that the National Association, through its national officers, should annually publish the convention papers and selected reference data, together with paid advertising at rates to be established by the board of directors; that the chapters of the association should cooperate in securing the advertising and, as compensation for their efforts, receive 15 per cent of the gross revenue paid for advertising secured and turned over to the national office, and that ''no chapter will publish or will cooperate in the publication of any medium containing paid advertising other than the above. No chapter shall use the name of the N.A.P.R.E. in soliciting advertising, except for the annual publication above mentioned.'' Neither the right to make the amendments nor the manner of making them is questioned.

The officers and majority members of the chapter, resenting this action, called a meeting of the chapter, notice of which was given to all members. At this meeting, November 19, 1941, a quorum was present. By a vote of 112 to 15 a resolution was adopted, reciting the above mentioned action of the National Association in respect to paid advertising and the strained relations between the chapter and the association caused thereby, and authorizing and directing the directors of the chapter ''to take any and all steps necessary, proper or requisite to surrender Chicago Chapter's charter and to effectively withdraw and completely sever the membership of Chicago Chapter from any and all affiliation and connection with the N.A.P.R.E.'' Another resolution was adopted providing for the appointment of a committee for the purpose of procuring the incorporation of a new organization as a corporation not for profit, and of ''transferring all assets and effects of the members of Chicago Chapter to the new organization.'' The new organization was incorporated December 6, 1941. On December 5, 1941, Taylor and Grant, purporting to act

as president and secretary of the chapter, wrote the National Association advising it of the action taken at the November 19th meeting and stating that the chapter did ''hereby and herewith surrender the charter, withdraw and completely sever the membership of the Chicago Chapter No. 1 from any and all connection or affiliation with the National Association of Practical Refrigerating Engineers, the same to take effect as of November 19th, 1941.'' By letter of January 3, 1942 the National Association acknowledged receipt of the letter of December 5 and stated that the National Association recognized the notification ''as merely the individual action of the signers of the notification and such others as may be taking similar individual action''; that it had approved the action of loyal members of the chapter who were carrying on the work and requested each officer or member who had withdrawn from the chapter to promptly deliver all property of the chapter in his possession or control to E. S. Libby, the newly elected president of the chapter. In the meantime, on December 18, 1941, pursuant to resolution adopted by the corporation, Taylor and Petermann, purporting to act as officers of the chapter, transferred the funds in the bank to the credit of the corporation. In addition to these funds, the chapter on November 19, 1941 was possessed of $3,800 in cash, kept in a safety deposit vault, various personal property, including business office equipment, membership records, minute books, books of account and other miscellaneous property, and certain accounts receivable, all of which were turned over to the corporation by the latter's officers and members, purporting to act as officers of the chapter. All this property, together with the collections made on the accounts receivable, was held by the corporation, its officers and members, at the time of the decree, entered August 25, 1943.

March 19, 1942 plaintiff bank filed its complaint setting up the transfer of the checking account from the credit of the chapter to the credit of the corporation, and a balance of $3,932.52 in the account; that E. S. Libby and A. L. Blatti, claiming to act as officers of the chapter, and on behalf of themselves and other persons alleged to be the then members of the chapter, assert that the balance in the checking account belongs to the chapter and its members; that the corporation had presented its check for the amount of the balance and demanded that the check be certified by plaintiff. Plaintiff asks that the claimants to the fund interplead and settle and adjust their demands between themselves. Each of the claimants filed an answer asserting title to the fund on deposit. On December 4, 1942, defendants Libby and Blatti, as officers and members of the chapter, in their own behalf and in behalf of remaining members of the chapter, and of the chapter, filed a counterclaim alleging the facts occurring prior to November 19, 1941, substantially as stated herein, and alleging that the $3,800 in the safety deposit box, and other property specifically mentioned, had been converted by the corporation and certain persons—former officers and members of the chapter—to the use of the corporation and themselves, and praying that the defendants to said counterclaim be required to account as to the property alleged to have been taken.

The principal question involved is the right of a majority, however large, of an unincorporated association organized not for profit, to withdraw from the parent organization and take with them the funds and property accumulated by the subordinate body and intended to be used by it in furthering the purposes of the parent organization.

The corporation says that the National Association and the subordinate chapters are not fraternal benefit associations; that they possess the characteristics of

a joint business enterprise, such as a partnership or other unincorporated association. We agree that neither the National Association nor its subordinate chapters is a fraternal benefit association. No sick, disability or death benefits are provided for the members. However, these bodies are not business enterprises created for the pecuniary profit of its members through the ownership of property or the carrying on of business. The purpose of the National Association and subordinate chapters is the promotion of ''education and enlightenment of its members in the art and science of refrigerating engineering'' through lectures, discussions, papers, etc., pertaining to that particular work. They are clearly organizations not for profit. The constitution and by-laws of the National Association are somewhat loosely drawn, lacking the completeness and particularity generally found in fraternal and mutual benefit associations or business enterprises. Except for the amendment to the constitution in 1941, authorizing the president, with the approval of a majority of the board of directors, to suspend a charter, there are no provisions relating to the withdrawal, termination or suspension of a subordinate chapter. The corporation contends that because of the want of such provisions, all or a majority of the members of a chapter may surrender the charter and take all, or their proportionate share, of its property.

The organization before us is similar in many respects to various religious denominations operating through unincorporated bodies, and should be governed by substantially the same principles of law as control such bodies. In *Ferraria v. Vasconcelles,* 23 Ill. 456, the court had under consideration the title to church property held in the name of the trustees of a church which in 1856 upon unanimous action of its members was received into and taken under the custody of the Old School Presbytery of Sangamon; in 1858 a majority of the church membership voted

against remaining in the Presbytery and, taking possession of the church, excluded the minority from using it. In speaking of the alleged right of the majority to thus withdraw from the parent body, the court said (460): "The defendants have failed to show that there is any provision in the constitution of the Presbyterian Church, as it is organized in this country, which authorizes an individual church to withdraw from the body. Nor was any authority produced to show the existence of such a right. With temporal, as well as ecclesiastical governments, as a general rule, there is no means by which any of the subordinate members of the government, or even the individuals attached to the organization, may, without the consent of the body, sever their connection with the organization. This is true of most of the moral, benevolent, and other associations of this and other countries. And the presumption, in the absence of proof, is that the constitution of the Presbyterian Church as a body, in this country, recognizes no such right. . . . After individuals or organized bodies have entered into a compact or agreement, it requires the assent of the contracting parties to abrogate the agreement, and no reason is perceived, on this principle, why a church which, by compact, has become a portion of the presbytery, should have the voluntary right to withdraw from the organization without mutual consent. No such right has been proved to exist by the usages of the Presbyterian Church." On remandment to the trial court the secessionists sought to prove the right to withdraw under the church law, which was denied. On a second appeal (27 Ill. 237) the Supreme Court held that the evidence should have been received, reaffirmed its former statement on the rights of members withdrawing and said (239): "After a careful review of all the adjudged cases, believed to throw any light on this question, and mature reflection to the extent of the time at our disposal, we are fully convinced that, unless the law of its

organization, its government and usages, authorize a withdrawal from the general organization, its consent must be obtained, or those adhering to its tenets and submitting to its authority, in a divided church, will be regarded as composing the church, and entitled to all of its rights and privileges. We therefore see no reason to change or modify the rule there announced.'' The case again came to the Supreme Court (31 Ill. 25), without change in the position stated above. This case has been cited as late as *Stallings v. Finney*, 287 Ill. 145, and *Russian-Serbian Holy Trinity Orthodox Church v. Kulik*, 202 Minn. 560. In the *Stallings* case (p. 149) the court said: ''In *Christian Church v. Church of Christ*, (219 Ill. 503) (a case very much in point here,) the court said: 'When the members of a religious congregation divide and one faction breaks away from the congregation and forms a new organization, the title to the property of the congregation will remain in that part of the congregation which adheres to the tenets and doctrines originally taught by the congregation to whose use the property was originally dedicated,' —citing *Ferraria v. Vasconcelles*, 23 Ill. 403, and 31 id. 25; *Church of Christ v. Christian Church of Hammond, supra*. In the case quoted from, the deed was made to the Sand Creek congregation, which congregation was not incorporated. The conveyance was held to be in the nature of a charitable trust, and all the members of the Sand Creek congregation became, by virtue of the execution of said conveyance, beneficiaries in the property then conveyed, —citing *Ferraria v. Vasconcelles, supra,* and *Alden v. St. Peter's Parish*, 158 Ill. 631. It was there held that when a member of a voluntary association withdraws therefrom he forfeits his right or interest in any of the property of the association even though a majority of the members of such association likewise withdraw, and that this is true even though such seceding members have contributed to the purchase of the prop-

erty.'' Substantially similar holdings in cases relating to secular associations are found in *Freundschaft Lodge v. Alchenburger,* 235 Ill. 438; *McFadden v. Murphy,* 149 Mass. 341; *Hill v. Rauhan Aarre,* 200 Mass. 438; *Gorman v. O'Connor,* 155 Pa. 239; *Henry v. Cox,* 25 Ohio App. 487, 159 N. E. 101; *Great Council, etc. v. Mohican Tribe, etc.,* 92 N. J. Eq. 593; *Minor v. St. John's Union Grand Lodge,* 62 Tex. Civ. App. 100, 130 S. W. 893, 897, and *Schiller Commandery No. 1 v. Jaennichen,* 116 Mich. 129.

In the present case the National Association refused to recognize surrender of the charter of the Chicago chapter and treated the action of the majority members of the chapter as individual withdrawals by such members: The chapter to which the majority originally belonged is still functioning under the charter. It is entitled to all the property owned by it when the majority of the members withdrew, and a decree so finding should have been entered.

The chapter insists further that it should have been permitted to file an amendment to its counterclaim asking for an accounting as to the profits made by the corporation through the use of the property of the chapter in the publication of a year or data book, and also through false representations alleged to have been made to advertisers that they were dealing with the chapter or with an affiliate of the National Association. The proposed amendment is not before us and we are therefore unable to finally pass upon the propriety of the court's action in denying leave to amend. *Dilcher v. Schorik,* 207 Ill. 528, 530; *Fortier v. Fortier,* 320 Ill. App. 626, 629. The chapter cannot recover for breach of the rights of the National Association and, by amendment of the by-laws in 1941, it is prohibited from publishing a data book. On remandment of the case the application to amend the counterclaim may be renewed.

The decree is reversed and the cause is remanded with directions to proceed in accordance with this opinion.

*Reversed and remanded with directions.*

O'CONNOR, P. J., and MATCHETT, J., concur.