**MISSOURI STATE TEACHERS ASSOCIATION, et al., Plaintiffs-Appellants,**

v.

**ST. LOUIS SUBURBAN TEACHERS ASSOCIATION, et al., Defendants-Respondents.**

**No. 41112.**

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 25, 1981.

---

Robert F. Summers, Clayton, for plaintiffs-appellants.

Donald James, St. Louis, Michael Flavin, Clayton, Thomas Cochran, Independence, for defendants-respondents.

SATZ, Judge.

This is a battle of the acronyms. Plaintiffs are the Missouri State Teachers Association (MSTA) and six individual teachers. The teachers sue individually and as representatives of a class of "disenfranchised" members of St. Louis Suburban Teacher's Association (Suburban). Suburban was affiliated with MSTA as a district. Defendants are Suburban, officers and directors of Suburban, the Missouri National Education

Association (MNEA), and officers of MNEA. The dispute centers on the passage of by-laws by Suburban which plaintiffs contend are inconsistent with the requirements imposed by MSTA on its district associations.

Count I of plaintiffs' petition is an action by the six teachers individually and the class they claim to represent against Suburban and Suburban's officers. Plaintiffs allege Suburban's Articles of Incorporation require Suburban to operate as a district of MSTA and Suburban passed by-laws contrary to these Articles and also contrary to requirements of MSTA. Plaintiffs request the by-laws be declared void.

Counts II and III are derivative actions brought by the teachers "on behalf" of Suburban against the officers of Suburban, the officers of MNEA and the MNEA. In Count II, plaintiffs request the defendant officers be directed "to account for their conduct in the management" of Suburban and they also be compelled to repay to Suburban money allegedly used for purposes and objectives other than the purposes and objectives of MSTA. In Count III, plaintiffs request Suburban be declared a division of MSTA and, according to plaintiffs, they also request imposition of a constructive trust on assets of the MNEA allegedly used by Suburban for the benefit of the MNEA.

In Count IV, the teachers, individually and as representatives of the class, and MSTA allege that MSTA is the parent organization of Suburban, and, as the "parent," MSTA has the right to require Suburban to maintain its affiliation with MSTA. In this count, plaintiffs also seek a declaration that Suburban is a division of MSTA.[1] In Count V, the teachers, as members of the class, and MSTA seek to enjoin defendants from using the name: St. Louis Suburban Teachers Association.

The trial court entered judgment for defendants on all Counts. On appeal, plaintiffs assert nine points of error. Finding none to have merit, we affirm.[2]

In this court-tried case, our review is governed by the well-known principles set out in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). We affirm the trial court's judgment unless it is not supported by substantial evidence or is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32. Naturally, we give due deference to the trial court's views on the credibility of witnesses. Rule 73.01; *Cusumano v. Outdoors Today, Inc.*, 608 S.W.2d 136, 139 (Mo.App.1980). We accept as true the evidence and permissible inferences favorable to the prevailing party, and we disregard contradictory evidence. *S. G. Adams Printing v. Central Hardware Co.*, 572 S.W.2d 625, 628 (Mo.App.1978).

The record, so viewed, reflects organizations representing Missouri teachers at three different levels: state, regional and local. MSTA represents teachers at the state level. At the regional level, teachers are represented by district associations, such as Suburban. At the local level, teachers are represented by Community Teachers Associations (CTA). Prior to 1972, one could be a member of a CTA or a district, such as Suburban, without being a member of MSTA and, prior to 1970, any person engaged in educational work who was a member of a local CTA within the Suburban district could be a member of Suburban.

In 1958, Suburban incorporated as a not-for-profit organization. Since 1970, Article 1 of its Articles of Incorporation has stated:

> *"This corporation is a district of the Missouri State Teachers Association. Its object shall be to promote strong educational organization which shall have the fol-*

---

1. In Count I–IV, plaintiffs also seek actual and punitive damages based upon allegedly improper acts of the individual defendants named in these counts.

2. In addition to finding for defendants on all counts, the trial court also denied plaintiffs'

request to bring this action on behalf of the defined class. Although plaintiffs challenge this ruling on appeal, we do not reach this issue because plaintiffs cannot prevail either as a class or individually.

lowing purposes: to maintain and elevate the professional and ethical standards of the teaching profession; to promote the general welfare of the membership of this association; and to secure the public understanding, appreciation and support necessary for a program of education that will be effective in developing mature adults who will appreciate and contribute to the democratic way of life." (emphasis added)

On November 24, 1970, Suburban, through its House of Delegates, amended its by-laws to require one to belong to the National Education Association (NEA), a national group of professional educators, in order to belong to Suburban. On January 10, 1972, the by-laws were amended to require membership in the MSTA, then the state affiliate of the NEA.

Tensions between NEA and MSTA came to a head over the concept of unification. Unification required a teacher who wanted to join either the NEA, the MSTA, the district association or the CTA, to join all four. NEA supported this concept. MSTA in the early seventies appeared to favor unification. Ultimately, MSTA decided its goals could best be achieved without unification. Suburban continually supported the concept, as is evidenced by its own by-law changes, and Suburban worked for its implementation in MSTA.

Nonetheless, on November 1, 1972, the MSTA at its annual convention adopted the following amendment to its Constitution:

"Membership in the NEA shall not be a requirement for membership in the community teachers association or district association, until such membership requirement is granted by this constitution."

Suburban leadership fought against the amendment and, after its passage, the leadership overtly agreed with, if they did not encourage, NEA's disaffiliation of MSTA. NEA did disaffiliate MSTA in the Spring of 1973. A new state affiliate of the NEA, the Missouri National Education Association (MNEA), was organized. Suburban leaders took an active part in the organization of this group.

The Executive Committee of MSTA notified the district associations, such as Suburban, and the CTAs they had until June 20, 1973, to comply with the amendment to the MSTA Constitution which mandated that NEA membership was not to be a requirement for membership in those associations. Suburban did not comply. The Suburban representative was expelled from the MSTA Executive Committee effective July 1, 1973 and Suburban received no funds from MSTA after that date.

On the effective date of October, 1973, Suburban amended its by-laws. Membership in MSTA was dropped as a requirement for membership in Suburban. Finally, on May 6, 1974, Suburban again amended its by-laws to delete all mention of CTAs, NEA and MNEA. From that time forward members of Suburban were required to be members of the "United Teaching Profession", a term meaning membership in a CTA, Suburban, MNEA and NEA. Subsequently, plaintiffs initiated the present action.

Plaintiffs' action below and arguments on appeal center on their interpretation of the sentence in Suburban's Articles of Incorporation which reads: "This corporation (Suburban) is a district of the Missouri State Teacher's Association." On appeal, plaintiffs argue this sentence must be construed as a mandatory directive or a stated purpose which required Suburban to remain a district of MSTA. Plaintiffs also contend the "change" of affiliation by Suburban from MSTA to NEA was a "radical change of fundamental policy" which was not supported by a required vote of Suburban's membership. In addition, plaintiffs contend MSTA, as a parent organization, could prevent Suburban from discontinuing its affiliation with MSTA.

In presenting their arguments in support of these three contentions, plaintiffs also attack additional findings made by the trial court. They attack the court's finding that MSTA disaffiliated Suburban, and they also attack the court's finding that the purpose of MSTA and the MNEA were "virtually

identical." We deal with these attacks in our discussion of the issues to which they are relevant.

## I

█ First, we address plaintiffs' contention that the Articles of Suburban require it to operate as a district of MSTA and that the by-laws passed by Suburban on unification violate this directive. Unquestionably, the by-laws of a corporation may not contain provisions which are inconsistent with the articles of incorporation. § 355.100 RSMo (1978); *Burnett v. Barnes*, 546 S.W.2d 744, 747–48 (Mo.App.1977). The issue here is whether there is any such inconsistency between the by-laws passed by Suburban and Article I of Suburban's Articles of Incorporation. All parties agree the determinative resolution of this issue depends upon the construction of the first sentence of Article I: "This corporation is a district of the Missouri State Teacher's Association." If this statement is a mandatory directive or a purpose of Suburban, the existence of by-laws which will clearly result in the expulsion of Suburban from MSTA puts the propriety of those by-laws in issue. If, on the other hand, the statement is construed as a simple statement of identity, there is no conflict, because there is no directive in the articles with which the by-laws must comply.

█ The problem, then, is one of interpreting the charter. The same rules which govern the interpretation of statutes and contracts apply to the interpretation of corporate charters. *Sundlun v. Executive Jet Aviation, Inc.*, 273 A.2d 282, 285 (Del.1970). Initially, we look to the language. *Id.; See, State ex rel. Zoological Park v. Jordan*, 521 S.W.2d 369, 372 (Mo.1975). If the meaning of the word is not plain, we consider the "legislative history" and surrounding circumstances. *Sundlun v. Executive Jet Aviation, Inc., supra; State ex rel. Zoological Park v. Jordan, supra.*

On its face, the relevant statement simply declares Suburban to be a district of MSTA. Whether it is mandatory or merely an indication of identity is unclear without further inquiry into surrounding circumstances.

The statement in question immediately precedes a sentence which specifically sets out the object and purposes of the organization. It is, thus, not a part of the traditional purpose clause of the Articles. This in itself is not conclusive, but it is an indication that MSTA district status is something other than a purpose of the organization.

In addition, the current Articles of Incorporation were derived from the Constitution used by Suburban prior to incorporation. The purpose for incorporation was not to effect any change in the Association's purposes as reflected in the former Constitution and by-laws. The original Constitution stated the "name" of the association "shall be known as St. Louis Teachers Association, a district of MSTA." In the Articles of Incorporation, the name St. Louis Suburban Teachers Association, is set out in paragraph 1; the statement that Suburban is a district of MSTA is stated in paragraph 2. Thus, Suburban's name and affiliation are set out in one phrase in the original Constitution and in the Articles they are set out in separate paragraphs. We see no significance in this change in format. The name and affiliation were clearly used for the purpose of identification in the Constitution. The separation of the two into two paragraphs in the Articles of Incorporation does not change that purpose.

This corporate exegesis fits comfortably with Suburban's method of operation; in particular, with its working relationship with MSTA. The testimony of former officers of Suburban established that Suburban was a self-directing organization, and that MSTA, in practice, exercised no control over the most important operation of Suburban. These officers testified that MSTA never exercised control over Suburban's budget, the amount of Suburban's dues, the size of or requirements for Suburban's membership or the use of Suburban's manpower or assets. In addition, MSTA never attempted to mandate policy for Suburban. Suburban created and established its own

programs and they were implemented by Suburban's Executive Director and his staff, without supervision by or direction from MSTA. This staff consisted of twelve full time employees who provided services for Suburban's local affiliates. This service included workshops, assistance in negotiating and processing grievances, interaction in political action and for professional development. Finally, although conclusory in nature, MSTA considered the district associations, such as Suburban, to be independent autonomous organizations. A self-evaluation report prepared by MSTA states, the "District Associations are autonomous divisions of the State Association," and the MSTA members' manual states, "the district is an independent geographical division of the Association with its own responsibilities and duties." Thus, there was substantial evidence to support the trial court's finding that the statement in question was neither a mandatory directive to Suburban nor a stated purpose of Suburban and that Suburban was a self-directing organization.[3]

Plaintiffs marshal evidence of the historical relationship between Suburban and MSTA, and they contend "[a]n examination of the long history of the relationship between [Suburban] and the MSTA clearly reveals that the phrase in the Articles of Incorporation was meant and intended to insure that [Suburban] operated as a district of the MSTA." We disagree.

Plaintiffs' conclusion is not compelled by the evidence on which they rely. Admittedly, the evidence demonstrates that, at the time of its incorporation, Suburban's status as a district of MSTA was perhaps an important aspect of Suburban's identity. However, it does not necessarily follow that Suburban intended to bind itself inextricably to MSTA, changing as MSTA changed, with no possibility of release. At the time of its incorporation, Suburban did state in its Articles: "This corporation ... *shall be* a district of the Missouri State Teacher's

Association." (emphasis added). This language could be construed sensibly as a requirement on Suburban. However, with equal sense, it can be construed simply as an indication that, at the time, Suburban's functional existence apart from MSTA was not contemplated by the incorporators. If this were the thinking of the incorporators, this thinking changed and the change was reflected by a change in the language of the Articles of Incorporation. As noted, they now read: "This corporation *is* a district of Missouri State Teacher's Association.: The change from the arguably directive "shall be" to the more passive "is" logically implies the status of Suburban as a MSTA District was not perceived as obligatory. It was not seen as something which ought to be explicitly required of the organization by its Articles of Incorporation.

Plaintiffs also emphasize evidence tending to establish the defendant officers of Suburban believed Suburban was not totally independent of MSTA and also urge us to consider evidence indicating these officers believed a change in the Articles of Incorporation was necessary before Suburban could change affiliation. The evidence consisted of documents which had been prepared by the Suburban officers at the time they were seeking to modify the Articles of Incorporation. The indications in these documents that the officers believed modification was necessary were contradicted by the officers' testimony at trial.

Apparently, plaintiffs view the documentary evidence as an admission by defendants of the mandatory nature of the language in the Articles. The trial court properly admitted this evidence at trial because plaintiffs sought punitive damages from defendants; hence, defendants' beliefs or knowledge were relevant. *See McClellan v. Highland Sales & Investment Co., Inc.*, 484 S.W.2d 239, 242 (Mo.1972); *Beggs v. Universal CIT Credit Corp.*, 409 S.W.2d 719, 722 (Mo.1966). This evidence is not necessarily relevant to and certainly not controlling on

---

3. This distillation and synopsis exemplifies the evidence supporting the trial court and found in

some 640 pages of transcript and 139 exhibits.

the court's determination of the meaning of the Articles. At best, the documentary evidence reveals conclusions. These conclusions were weighed by the trial court and, in the context of the entire record, they obviously were found wanting.

■ Moreover, even if we were to characterize the evidence on which plaintiffs rely as an admission of fact by defendants, this evidence was contradicted by defendants' testimony at trial. As plaintiffs themselves note, the issue would thus be one of credibility. Determinations on credibility rest with the trial court. *Prudential Property & Cas. Ins. v. Cole*, 586 S.W.2d 433, 434 (Mo.App.1979); *Cusamano v. Outdoors Today, Inc.*, 608 S.W.2d 136, 139 (Mo. App.1980). Here, it may well have believed the defendants' testimony at trial that they always considered Suburban an autonomous organization. We will not disturb this finding.

■ We agree with the trial court's construction of the Article in question. Suburban's Articles do not require it to operate as a district of MSTA, and the Articles do not require Suburban's by-laws to be consistent with the requirement of MSTA promulgates for its districts. Thus, Suburban's by-laws requiring membership in the NEA and the MNEA are not inconsistent with its Articles of Incorporation.

## II

As an alternative contention, plaintiffs argue an internal limitation would require Suburban to maintain its status as a district of MSTA. They contend the changes in Suburban's by-laws which required NEA membership and the deletion of references to MSTA, as well as the organizational changes which occurred upon affiliation with MNEA, were radical changes which required approval by a vote of Suburban's members. This approval was not secured and, therefore, plaintiffs contend, the by-laws are void.

■ Admittedly, radical changes in an organization's fundamental policy or purposes do require a vote of the membership.

*Komanetsky v. Missouri State Medical Association*, 516 S.W.2d 545, 555 (Mo.App. 1974). However, contrary to plaintiffs' conclusion, we do not find the change in Suburban's by-laws radically changed or even changed its fundamental policy or purposes.

As we have already demonstrated, the change in the by-laws did not conflict with Suburban's stated purposes. In passing the by-laws in issue, Suburban was merely explicitly mandating a policy it had always supported. Indeed, unification was a policy which MSTA had supported for some time. Moreover, Suburban's day to day functions did not change significantly following the severance of its ties with MSTA. Suburban still continued to promote education and the teaching profession.

The only real change which took place was the change in affiliation from MSTA to MNEA. The trial court found this was not a radical change because the purposes of MSTA and MNEA were "virtually identical". Despite plaintiffs' contention to the contrary, this finding was supported by substantial evidence at trial. Ruth Keeling and Harold Austin, former officers of Suburban and MNEA, both testified the goals and objectives of MSTA and MNEA were very similar. This testimony was not objected to at trial. Plaintiffs now argue articles of incorporation are the only competent evidence to establish corporate purposes and cite *Northeast Osteopathic Hospital v. Keitel*, 197 S.W.2d 970 (Mo.1944) to support their argument. *Northeast Osteopathic Hospital* offers no real support to plaintiffs. At best and by implication, that case may support the principle that oral testimony is not sufficient to contradict the stated, written purposes of an organization. Plaintiffs admit the MNEA's written articles are not part of this record. Thus, the unobjected to oral testimony of witnesses Keeling and Austin supported the trial court finding the purposes of MNEA and MSTA to be virtually identical.

## III

■ Finally, plaintiffs argue that, as the parent organization, MSTA had the right to

prevent Suburban from withdrawing. We reject this argument for two reasons. First, the trial court found that MSTA disaffiliated Suburban, not vice-versa. Although plaintiffs argue to the contrary, this finding was supported by substantial evidence. MSTA had decided to give all CTAs and districts until June 30, 1973 to conform to the amendment which forbade requiring NEA membership as a prerequisite to district or CTA membership. When the date arrived and Suburban had not complied, MSTA ceased sending Suburban funds. MSTA also notified Suburban's representative to MSTA's Executive Committee that, because of Suburban's failure to comply, Suburban was no longer entitled to representation on the Executive Committee. From this evidence, the trial court could well have concluded that MSTA disaffiliated Suburban. We have no reason to disturb this finding.

Moreover, if Suburban did disaffiliate from MSTA, MSTA had no right to prevent Suburban's disaffiliation. Plaintiffs' claim that MSTA has controlling rights as a parent is based on *Winnetka Trust & Savings Bank v. Practical Refrigerating Engineer's Association*, 322 Ill.App. 154, 54 N.E.2d 253 (1944). There, the court applied the rules governing religious societies to the association before it and held the minority of members who continued to operate as an affiliate of the National Association were entitled to all the property owned by the group. *Id.* at 256–57. The reasoning of *Winnetka Trust* is not persuasive. There is significant differences between the organizational structures in that case and the organizational structures before us. In *Winnetka Trust*, the constitution of the local explicitly recognized the parentage of the national association. Further, the constitution stated the purpose of the chapter was "to aid in the National Association in carrying out its tenets, as set forth in its preamble." *Id.* at 254. As noted previously, there are no comparable explicit references to the relationship between MSTA and Suburban in Suburban's Articles of Incorporation. Moreover, the current value of *Winnetka Trust* is questionable in light of a later case decided by the Illinois Court

of Appeals which substantially undercuts the holding in *Winnetka Trust*. *See Little v. Chicago Women's Bowling Association*, 337 Ill.App. 226, 84 N.E.2d 690 (1949). The *Little* court refused to apply the rule set out in *Winnetka* noting there was no explicit agreement by the association before it to be bound by the constitution and by-laws of its parent. This is also true in the case before us. We conclude, as the *Little* court did, that, absent a provision to the contrary, a local affiliate has the right to discontinue the affiliation. *See id.* at 698. This right is inherent in the power an affiliate, such as Suburban, has as a separate corporation. Then, if Suburban withdrew from MSTA, its withdrawal was simply an exercise of an inherent corporate right.

### IV

Plaintiffs' remaining arguments depend upon our ruling that Suburban's Articles of Incorporation did require Suburban to operate a district of MSTA. Since we have not found this requirement to exist, plaintiffs' remaining arguments fail, and we do not address them.

Judgment affirmed.

SMITH, P. J., and SIMON, J., concur.

